NUMBER 13-00-346-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


MARIA L. GOMEZ , Appellant,



v.


PEDRO S. DIAZ, INDIVIDUALLY 

AND PEDRO S. DIAZ, M.D., P.A. , Appellees.

__________________________________________________________________

On appeal from the County Court at Law No. 2

of Nueces County, Texas.

__________________________________________________________________


O P I N I O N



Before Justices Dorsey, Hinojosa, and Castillo

Opinion by Justice Dorsey

Maria L. Gomez brings this appeal complaining that the trial court improperly granted summary judgment against her on all
causes of action against appellees Pedro S. Diaz, M.D. and Pedro S. Diaz, M.D., P.A. (collectively referred to herein as
Diaz). Plaintiff sued Dr. Diaz for fraud, misrepresentation, breach of fiduciary duty, violations of the DTPA, breach of
express warranty and battery. She specifically excluded any claims for professional negligence from her lawsuit.

Ms. Gomez's lawsuit stems from injuries she alleges to have sustained as a result of undergoing a hysterectomy performed
by Dr. Douglas Matey in 1996. (1) Dr. Diaz was neither involved in performing that operation nor in rendering any
treatment leading up to it. Ms. Gomez first saw Dr. Diaz in 1997, almost a year after her hysterectomy. She claims that at
that time, Dr. Diaz told her that the hysterectomy had been badly done, leaving her bladder damaged and her ovaries
"dangling."

Dr. Diaz recommended that Ms. Gomez have her bladder repaired and her ovaries removed. Ms. Gomez complains that
Diaz advised her of no other treatment alternatives. Diaz, in fact, performed the surgery to make the repairs. Ms. Gomez
also complains that this surgery was performed incorrectly, and that despite Dr. Diaz's knowledge that the surgery did not
go well, he falsely assured her that she would recover from it satisfactorily and that her prognosis was good. Also, Ms.
Gomez complains that Dr. Diaz refused to repeat the statements he made to her regarding the poor quality of the
hysterectomy that had been performed the year before, which prevented her from filing suit to recover for the damages she
sustained as a result.

Ms. Gomez alleges that Dr. Diaz's refusal to assist her "in exposing the previous malfeasance" committed by the doctor
who performed the hysterectomy amounted to a breach of fiduciary duty and was unconscionable. She claims that his
failure to advise her of alternatives to having her ovaries removed was unconscionable, and was performed without
effective consent, which she was unable to give absent full knowledge of the available alternative courses of treatment. She
also claims that Diaz fraudulently induced her into consenting to the removal of her ovaries. Finally, she claims that Diaz's
refusal to repeat his criticisms about the hysterectomy was calculated to prevent her from pursuing a cause of action against
the providers of that surgery.

Standard of Review

Dr. Diaz moved for summary judgment on both traditional and no-evidence grounds. Compare Tex. R. Civ. P. 166a(c)with
Tex. R. Civ. P. 166a(i). The standards by which this Court reviews the two types of summary judgments are different. See
Michael v. Dyke, 41 S.W.3d 746, 750-51 (Tex. App.--Corpus Christi 2001, no pet.).

We review a trial court's grant of traditional summary judgment by using the same standards used by the trial court. 
SeeTex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt., 690 S.W.2d 546, 548-49 (Tex. 1985). To prevail, the moving party
must conclusively establish the absence of any genuine question of material fact and entitlement to judgment as a matter of
law. See Tex. R. Civ. P. 166a(c). The motion must state the specific grounds upon which judgment is sought. Id. The
movant must either prove all essential elements of his claim, MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986), or
negate at least one essential element of the nonmovant's cause of action. See Randall's Food Markets, Inc. v. Johnson, 891
S.W.2d 640, 644 (Tex. 1995). If the moving party moves for summary judgment on an affirmative defense, he must
conclusively establish each element of the affirmative defense. Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex.
1996).

In a traditional summary judgment proceeding, once the movant has established a right to summary judgment, the burden
shifts to the nonmovant to respond to the motion by presenting to the trial court any issues that would preclude summary
judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979). When, as in this case, the
summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any
of the grounds presented in the motion are meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

A party may also file a motion for a no-evidence summary judgment on grounds that no evidence exists of one or more
essential element of a claim or defense on which an adverse party would have the burden of proof at trial. See Tex. R. Civ.
P. 166a(i). Rather than being required to show entitlement to judgment as a matter of law, a movant seeking a no-evidence
summary judgment is merely required to point out which elements of the opposing party's claim or defense the movant
contends are not supported by any evidence. See id. Then, the burden shifts to the nonmovant to produce summary
judgment evidence on the challenged element that raises a genuine issue of material fact. Id. The court must grant the
motion if the nonmovant fails to produce such evidence. Id.

DTPA Causes of Action

We first address Gomez's DTPA claims. Ms. Gomez plead numerous violations of the DTPA. See Tex. Bus. & Com.
Code Ann. § 17.41 et seq. Dr. Diaz moved for no-evidence summary judgment on Gomez's DTPA causes of action on
grounds that Gomez could produce no evidence that Dr. Diaz engaged in any false, misleading, or deceptive act that was a
producing cause of damages.

A DTPA cause of action may be based on a claimed "laundry list" violation, (2) a claim for breach of an express or implied
warranty (3) or a claim for any unconscionable action or course of action. (4) See Tex. Bus. & Com. Code Ann. § 17.50
(Vernon Supp. 2001). Gomez alleged that Diaz committed a number of laundry list violations, breached warranties, and
engaged in unconscionable conduct. She also alleged that all DTPA violations were engaged in "knowingly." See id. §
17.50(b)(1). Proof that DTPA violations are engaged in knowingly allows the jury to award additional damages to the
plaintiff. See id. "Knowingly" is defined as "actual awareness of the falsity, deception, or unfairness of the act or practice
giving rise to the consumer's claim or, in [a breach of warranty] action . . . , actual awareness of the act or practice
constituting the breach of warranty . . . ." Id. § 17.45 (9). We separate Gomez's DTPA causes of action based on knowing
conduct from those not based on knowing conduct for purposes of our analysis.

The factual basis of Gomez's DTPA causes of action against Dr. Diaz based on knowing conduct seem to center on three
complaints: (1) he knowingly failed to provide her with adequate information regarding treatment options to enable her to
grant meaningful consent to the removal of her ovaries, (2) he knowingly failed to repeat his initial statements to her to the
effect that the previous doctors had done poor work in performing her hysterectomy in order to prevent her from filing suit
against those doctors, and (3) he knowingly altered and kept his records in a manner designed to be misleading. Gomez
alleged the following specific "knowing" DTPA violations:

violation of 17.46(21) by knowingly representing that work or services have been performed on, or parts replaced, when
the work or services were not performed or the parts replaced;

violation of 17.46(5) by knowingly representing that goods or services have sponsorship, approval, characteristics,
ingredients, uses, benefits or qualities which they do not have;

violation of 17.46(12) by knowingly representing that their agreement involved rights, remedies, or obligations which it
did not have or involve, or which are prohibited by law; 

violation of 17.46(13) by knowingly making false or misleading statements of fact concerning the need for parts,
replacements, repair service;

violation of 17.46(23) by knowingly failing to disclose information concerning goods or services which was known at the
time of the transaction, when such failure was intended to induce the consumer into a transaction into which the consumer
would not have entered had the information been disclosed;

violation of 17.50(2) by knowingly breaching a warranty; and

violation of 17.50(3) by engaging in an unconscionable course of action.

See Tex. Bus. Com. Code Ann. §§ 17.46(5), (12), (13), (21), (23), 17.50. To prove any of these causes of action, Ms.
Gomez would have to produce some evidence that Diaz engaged in some type of intentionally misleading conduct. We
find that Ms. Gomez has failed to produce any evidence that Dr. Diaz engaged in any such conduct. Thus, the trial court
correctly granted summary judgment on these causes of action.

Gomez produced several items of documentary evidence. While Diaz objected to her evidence, he did not obtain a ruling
on his objections and therefore, they are waived for purposes of appeal. Accord Castillo v. Tropical Texas Center for
Mental Health and Mental Retardation, 962 S.W.2d 622, 625 (Tex. App.--Corpus Christi 1997, no writ). First, Gomez
attached her own affidavit wherein she swore that:

(1) Dr. Diaz told her she needed to have her ovaries removed and that if she did, she would not have any more pain;

(2) Dr. Diaz told her that she was having pain because of her previous doctors' failure to complete all procedures that
should have been performed in conjunction with the hysterectomy;

(3) She reviewed Dr. Diaz's medical records and found apparent his attempts to materially change his operative notes;

(4) She would not have consented to the surgery performed by Dr. Diaz if he hadn't told her it would alleviate her pain;

(5) Prior to the surgery, Diaz specifically assured her that she would be able to have intercourse again following the
surgery, that his repairs would probably last forever, and that she would have no more urine leakage--all of which turned
out to be false;

(6) Dr. Diaz failed to put his opinions in writing so that she could sue the physicians who performed the hysterectomy on
her; and

(7) She is a consumer under the meaning of the DTPA.

Ms. Gomez also attached her own responses to interrogatories as summary judgment evidence. Again, while Diaz lodged
particularly valid objections with regard to this evidence, his objections are waived because he failed to obtain a ruling on
them. Id. At any rate, upon reviewing those answers, we find that the only relevant information they contain that is not
merely cumulative of the information contained in her affidavit is Gomez's answer to an interrogatory that asked for details
regarding her allegations that Dr. Diaz altered or destroyed medical records in a misleading manner. This interrogatory
stated:

If you claim or contend that any part or any portion of any medical record of any party to this suit has been changed, erased,
destroyed, altered, contains inappropriate late entries or has been documented in a manner as to misrepresent any fact,
please [provide details for each allegation].

Her response was:

(1) There is no mention [in the records] that the "repairs" Dr. Diaz attempted were necessary due to the reasons Dr. Diaz
told me they were, that is, because whoever had operated on me had left me in a condition that no other doctor would have;

(2) There is no mention that the repairs he attempted were unsuccessful;

(3) There is no clear mention of what the reason was that I was in the condition I was in;

(4) There is no mention of him discussing any specific alternatives with me;

(5) There is a contradiction in his records regarding what he did to me during my operation.

Gomez further notes in her response that the "contradiction" alleged to be contained in Dr. Diaz's records is contained in his
operative notes and his later narrative report that were also attached as evidence. However, our review of these documents
does not reveal any such contradiction.

This does not amount to any evidence that Dr. Diaz knowingly misrepresented anything to Ms. Gomez. All Gomez's
complaints center on inadequacies in Dr. Diaz's medical work, but are not evidence that he intentionally misrepresented
anything. While Ms. Gomez does offer her own testimony that it is "apparent" from the face of the medical records that
they were altered and/or maintained in a deceptive manner, we do not believe that amounts to any evidence of those
allegations. We have reviewed those records and we did not find any alteration at all, much less an alteration that is so
apparent it amounts to evidence of knowing misrepresentation. In order to defeat Dr. Diaz's motion for summary judgment,
Ms. Gomez was required to produce more than a scintilla of evidence that Dr. Diaz took some action that was "knowingly
deceptive" as defined by the DTPA. See Merrell Dow Pharm. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).

We are mindful that direct evidence is not required to show that an act was made "knowingly" under the DTPA. See Tex.
Bus. Com. Code Ann. § 17.45 (9) (Vernon Supp. 2001). Rather, the actual awareness necessary to establish knowing
conduct under the DTPA may be inferred where objective manifestations indicate that a person acted with actual
awareness. Id. However, Ms. Gomez's summary judgment proof does not provide any evidence of objective
manifestations that would indicate Diaz acted in a knowingly deceptive manner. More than a scintilla of evidence exists
when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.
Merrell Dow, 953 S.W.2d at 711. Ms. Gomez did not meet her burden. Therefore, we affirm the trial court's grant of
summary judgment on these causes of action.

The next group of causes of action alleged by Gomez are essentially the same as the first group, minus the allegation that
the conduct was done knowingly. This includes her cause of action that Dr. Diaz represented that their agreement involved
rights, remedies, or obligations which it did not have or which are prohibited by law, her breach of warranty and similar
claims. We hold that these allegations are merely attempts to recast a health care liability claim into DTPA causes of
action.

Healthcare liability claims--commonly referred to as medical malpractice claims--are governed by a special statutory
scheme designed to protect health care providers from patently unmeritorious claims in order to ensure that their liability
insurance costs remain manageable. See Tex. Rev. Civ. Stat. art. 4590i, § 1.02 (Vernon Supp. 2001) (Article 4590i referred
to herein as the "Medical Liability and Insurance Improvement Act" or "MLIIA"). A health care liability claim is defined
as:

[any] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure
from accepted standards of medical care or health care or safety which proximately results in injury to or death of the
patient, whether the patient's claim or cause of action sounds in tort or contract.

Id. at § 1.03 (a)(4).

Texas courts have consistently held that causes of action that are, in actuality, health care liability claims cannot simply be
recast in the language of a different cause of action in order to avoid application of the MLIIA. See Sorokolit v. Rhodes,
889 S.W.2d 239, 242 (Tex. 1994). In determining whether a plaintiff has attempted to recast a health care liability claim,
we examine the underlying nature of the cause of action. Id. If the cause of action is based on the physician's breach of the
accepted standard of medical care, the cause of action is nothing more than a health care liability claim, no matter how a
plaintiff labels it. See Gormley v. Stover, 907 S.W.2d 448, 450 (Tex. 1995); see also Earle v. Ratliff, 998 S.W.2d 882,
892-93 (Tex. 1999). We look to see whether the challenged act was "an inseparable part of the rendition of medical
services." Walden v. Jeffery, 907 S.W.2d 446, 448 (Tex. 1995). The test is whether, to successfully prove the claim, the
plaintiff must prove a breach of the applicable standard of care for health care providers. See MacGregor Medical Ass'n v.
Campbell, 985 S.W.2d 38, 41 (Tex. 1998). Moreover, DTPA claims against physicians or health care providers that are
alleged to have resulted from the negligence of a physician or health care provider are also expressly preempted by another
section of the MLIIA. See Art. 4590i, § 12.01 (Vernon Supp. 2001).

We hold that Ms. Gomez's DTPA causes of action that are not based on knowing conduct are merely attempts to recast
healthcare liability claims into DTPA causes of action and must be governed by the MLIIA. In this group of causes of
action, Ms. Gomez's true complaints are that Diaz failed to perform as a reasonably prudent physician. She complains that
he misrepresented the need for treatment and misrepresented that a service had particular qualities. What she is really
complaining about is a failure to properly diagnose her condition and a failure to properly treat her condition. The failure
of a physician to disclose to his patient the risks and hazards involved in the medical care or surgical procedure is a
negligence cause of action. See McKinley v. Stripling, 763 S.W.2d 407, 409 (Tex. 1989). These types of claims fall
squarely under the definition of health care liability claims and are governed by the MLIIA.

Dr. Diaz moved for traditional summary judgment on this ground. We hold that he established his entitlement to judgment
as a matter of law on Ms. Gomez's DTPA causes of action that do not allege any knowing misrepresentation because they
are merely recast health care liability claims. Thus, we hold the trial court properly granted summary judgment on those
claims as well.

Fraud, Battery and Other Claims

Next, we turn to Gomez's claims of common law fraud. Dr. Diaz moved for no-evidence summary judgment on grounds
that plaintiff could produce no evidence on any element of her causes of action for common law fraud. The elements of
common-law fraud are that (1) a material representation was made, (2) the representation was false, (3) when the
representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a
positive assertion, (4) the representation was made with the intention that it be acted upon by the other party, (5) the party
acted in reliance upon the representation, and (6) the party suffered injury. Johnson & Higgins of Texas, Inc. v. Kenneco
Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998). Our analysis of Gomez's DTPA causes of action based on intentional
misrepresentation applies to her fraud cause of action as well. That is, we agree that Gomez produced no evidence of any
intentional misrepresentation on the part of Diaz. This evidence is essential to show the first four elements of Ms. Gomez's
common law fraud cause of action. Therefore, we affirm the trial court's grant of no-evidence summary judgment on this
cause of action.

We turn now to Gomez's cause of action for battery. Dr. Diaz moved for traditional summary judgment on the basis that
this cause of action was merely a recast health care liability claim. See Tex. R. Civ. P. 166a(c). We agree. The essence of
Gomez's battery cause of action is that Diaz's failure to adequately inform her regarding the surgery he performed prevented
her from effectively consenting to the operation. Therefore, his performance of the operation constituted battery. Cases
regarding whether a patient effectively consented to a medical procedure are expressly brought within the purview of the
MLIIA. See Tex. Rev. Civ. Stat. Ann. art. 4590i, subchapter F. We hold the trial court correctly granted summary
judgment in favor of Dr. Diaz on this claim.

Finally, we must address Ms. Gomez's allegation that Dr. Diaz intentionally refused to repeat his opinion that the
hysterectomy was not performed correctly. Ms. Gomez contends that this amounts to a breach of fiduciary duty and
unconscionable conduct. Again, we hold that these are merely recast health care liability claims. We cannot see how this
claim amounts to anything other than a claim that the doctor failed to adhere to professional standards of conduct in his
treatment of Diaz. If any duty exists for a doctor to repeat statements made to a patient, it would derive from the
professional relationship between them. Cf. St. John v. Pope, 901 S.W.2d 420, 424 (Tex. 1995). Thus, any such claim
would be--in effect--a claimed departure from the standards that govern the health care industry, and as such, would be a
healthcare liability claim governed by the MLIIA. Accordingly, we affirm the trial court's grant of summary judgment on
that basis, as well.

As we have found the trial court properly granted summary judgment against Ms. Gomez on all causes of action plead
against Dr. Diaz, we affirm the judgment of the trial court in all respects.



______________________________

J. BONNER DORSEY,

Justice



Publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 31st day of August, 2001.

1. Several others besides Dr. Matey were originally named as defendants in this lawsuit. All defendants except Diaz were
severed in 1999. The severed portion of this cause is also pending with this Court at No. 13-99-631-CV.

2. The "laundry list" provides twenty-four definitions of "false, misleading or deceptive conduct" that are made actionable
under section 17.50 of the DTPA. See Tex. Bus. & Com. Code Ann. § 17.46, § 17.50. The elements of a DTPA "laundry
list" cause of action are: (1) the plaintiff is a consumer as defined in the Act; (2) the defendant engaged in a false,
misleading, or deceptive act (from the "laundry list"); and (3) the act constituted a producing cause of the consumer's
damages. Doe v. Boys Clubs of Greater Dallas, 907 S.W.2d 472, 478 (Tex. 1995); see also Tex. Bus. & Com. Code Ann.
§ 17.50. 

3. Because the DTPA does not supply a unique definition for "warranty," the DTPA applies to warranties created either by
common law or statute. See La Sara Grain Co. v. First Nat. Bank of Mercedes, 673 S.W.2d 558, 565 (Tex. 1984).

4. Unconscionable conduct means "an act or practice which, to a person's detriment: (A) takes advantage of the lack of
knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or (B) results in a gross disparity
between the value received and consideration paid, in a transaction involving transfer of consideration." Tex. Bus. & Com.
Code Ann. § 17.45 (5) (Vernon Supp. 2001).