# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

DOENYKA LEWIS,

                    Plaintiff,

v.

DR. KEVIN STEWART, and
OPTHALAMOLOGY CONSULTANT, P.C.
d/b/a PLESSEN OPTHALMOLOGY,

                    Defendants.

CIVIL NO. SX-2019-CV-00378

2024 VI SUPER 32

**ACTION FOR MEDICAL
MALPRACTICE AND
NEGLIGENCE**

JURY TRIAL DEMANDED

## MEMORANDUM OPINION

¶1    **THIS MATTER** is before the Court on Plaintiff's Motion to Amend Complaint ("Motion"), Defendants' Opposition, and Plaintiff's Reply. Doenyka Lewis ("Plaintiff") filed her Motion on September 7, 2023, following a deposition of Defendant Ophthalmology Consultants, P.C. d/b/a Plessen Ophthalmology ("O.C.P.C."). At the deposition, Plaintiff allegedly learned that in 2019 O.C.P.C transferred all its assets and goodwill to a newly formed entity Ophthalmology Consultants, PLLC ("O.C. PLLC"). Plaintiff seeks to amend her Complaint to name O.C. PLLC as a defendant and to allege a new count of fraudulent transfer from O.C.P.C. to O.C. PLLC and related entities. Dr. Kevin Stewart and O.C.P.C (collectively "Defendants"), in their Reply, claim that Plaintiff's Motion is improper because it did not comply with Title 27 V.I.C. § 166i, which sets forth the statutory requirements for jurisdiction related to medical malpractice claims.

¶2    Upon finding Plaintiff's claim that Defendant O.C.P.C. fraudulently transferred its assets and goodwill to O.C. PLLC is not a claim under the Medical Malpractice Act, 27 V.I.C.§166i, the Court will grant Plaintiff's Motion to Amend Complaint.

## Factual Background

¶3     The Parties agree that Plaintiff has met the 90-day prefiling requirements under Title 27 V.I.C. § 166i ("Section 166i").[1] On April 24, 2019, Plaintiff filed with a Medical Malpractice Action Review Committee ("Committee") a notice of intent to file a claim and a copy of the proposed complaint alleging medical malpractice against Defendants. Plaintiff also forwarded the proposed complaint to the Defendants, giving the Defendants notice of the asserted claims.[2]

¶4     On August 1, 2019, Plaintiff filed a verified Complaint in Court. In three separate counts, the Complaint alleges that Dr. Stewart failed to diagnose Plaintiff properly, negligently provided inadequate medical care to the Plaintiff, performed surgery on the Plaintiff in a negligent manner, and failed to meet the proper standards of medical care resulting in the loss of vision in Plaintiff's left eye.[3] Plaintiff's Complaint also alleges in two other counts that Defendant O.C.P.C. is liable since Dr. Stewart was an employee and agent of O.C.P.C. at the time of negligent care.[4] Defendants filed an Answer to the Complaint on September 19, 2019.[5]

¶5     On August 15, 2023, during the deposition of O.C.P.C., Plaintiff discovered that in July of 2019, Defendants changed the entity structure of their business, from a "Professional Corporation" ("P.C.") to a "Professional Limited Liability Corporation" ("PLLC").[6] O.C.P.C transferred all of its assets and good will to the new entity O.C. PLLC, effectively undercapitalizing Defendant O.C.P.C.[7] Further, the previous shareholders of O.C.P.C. became members of the newly formed

---

[1] *Pl Compl. ¶5; Pl.'s Mot. To Amend Compl. at 1; Def.'s Opp. P. 1.*

[2] *Pl.'s Mot. to Amend Compl. at 1.*

[3] *See, Pl's Compl.*

[4] *Id.*

[5] *See, Defs.' Answer.*

[6] *Mot. to Amend Compl. 1-2.*

[7] *Id.*

SEES Group a/k/a SouthEast Eye Specialists ("SEES").[8] The change in entity structure and transfer of assets took place *after* the Defendants became aware of the claims against them noticed in April of 2019.[9]

¶6     On September 7, 2023, Plaintiff motioned to amend her Complaint to include the newly created entities, O.C. PLLC and SEES as defendants in this matter and to allege that the July 2019 transfer was fraudulent.[10]  Defendants opposed the Motion, claiming that the Court did not have jurisdiction over the newly named defendants or the fraudulent transfer claim because Plaintiff failed to submit the amended complaint to the Committee prior to filing to amend in Court.[11]  In her Reply, Plaintiff argues that the requirement set forth by Section 166i only applies to medical malpractice claims and that the fraudulent transfer is not a medical malpractice claim required to be filed with the Committee.[12]

## Legal Standard

¶7     Motions to amend are governed by Rule 15 of the Virgin Islands Rules of Civil Procedure. After the initial 21 days after service of a responsive pleading, Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.[13] The court should freely give its leave when justice so requires."[14] Granting the motion, however, is within the sole discretion of the Superior Court. *Anthony v. Indep. Ins. Advisors, Inc.*, 56 V.I. 516, 534 (V.I. 2012) (cited in *Liburd v. Virgin Islands Water & Power Auth.*, 2023 VI SUPER 76, ¶ 6

---

[8] *Id.*

[9] *Supra* note 2.

[10] *Mot. to Amend Compl. Ex. 1.*

[11] *Defs.' Opp'n to Mot. to Amend.*

[12] *Pl.'s Reply to Opp'n.*

[13] *V.I. R.Civ. P. 15(a)(2).*

[14] *Id.; Basic Services, Inc. v. Government of the Virgin Islands*, 71 V.I. 652, 666 (V.I. 2019). *Davis v. UHP Projects, Inc.*, 74 V.I. 525, 536-537 (V.I. 2021).

(V.I. Super. Dec. 4, 2023)). Because a court may justifiably deny a party's motion to amend a pleading, the Court should consider whether there was undue delay, bad faith or dilatory motive in filing the motion, "repeated failures to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Basic Services*, 74 V.I. at 536 (cited in *Horwitz & Co., Inc. v. Cowpet Bay W. Condo. Ass'n, Inc.*, 2024 VI SUPER 6U, ¶ 5 (V.I. Super. Jan. 25, 2024)).

## Discussion

### Undue delay, Bad Faith or Dilatory Motive, Repeated Failures to Cure

¶8 During a deposition of Defendant on August 15, 2023, Plaintiff learned that in July of 2019 Defendant O.C.P.C. had changed its structure to a professional limited liability corporation. The result is that O.C. PLLC, the new entity, had acquired all the assets and goodwill of O.C.P.C., leaving O.C.P.C. undercapitalized. Were Plaintiff to receive a favorable judgment, she would be unable to collect from O.C.P.C. Three weeks after the deposition, Plaintiff moved to amend. Plaintiff could not have included the new defendants or claims in her original complaint because the entities she seeks to add as well as the cause of action did not exist at the time she filed her original Complaint. The Plaintiff's motion is found to be timely and not in bad faith or for a dilatory purpose, as it is based on information revealed through recent discovery. The Plaintiff also did not previously seek to amend her complaint.

### Prejudice to the Opposing Party

¶9 Plaintiff seeks to amend only because of Defendant's conduct in changing the structure and assets of O.C.P.C. The proposed amendment attempts to focus the Court's lens on the legality of

the transfer given the pending litigation of which the Defendant was aware. The Court finds no prejudice to the Defendants should the amendment be permitted.

Futility of the Amendment

¶10 In considering whether the proposed amendments would be futile the Court must review the scope and purpose of Section 166i. Title 27 V.I.C. § 166i(b) requires a claimant to file an action against a healthcare provider with the Medical Malpractice Action Review Committee before filing in a court.[15] The purpose of filing with the Committee is "to arrange for expert review of *all malpractice claims* before actions based upon such claims are commenced in court."[16]

¶11 The requirement that actions containing medical malpractice claims first be brought before the Committee does not prohibit plaintiffs from amending their complaints to include a nonmedical malpractice claim without seeking approval of the Committee. The purpose of Section 166i is to act as a filter for frivolous malpractice claims against healthcare providers by requiring an expert to review malpractice claims before actions are brought in Court.[17] Section 166i specifically applies to malpractice claims stemming from healthcare or professional services rendered to a patient.[18] Here, the additional claim of fraudulent transfer is not a tort or breach of contract "based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient."[19]

¶12 Moreover, Section 166i does not contemplate a mechanism in which the Committee can render approval or disapproval of a non-medical malpractice claim.[20] Section 166i(a)

---

[15] *27 V.I.C. § 166i(b)*.

[16] *27 V.I.C. § 166i(a)*. (emphasis added).

[17] *27 V.I.C. § 166i(a)*; *see also Brady v. Cintron*, 55 V.I. 802, 816 (V.I. 2011).

[18] See, *Title 27 § 166(f)* in which "Malpractice" is defined as "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient".

[19] *Brady v. Cintron*, 55 V.I. at 816.

[20] *27 V.I.C. § 166i*.

unambiguously states that the Committee's purpose is to "arrange for expert review of all *malpractice claims*."[21] Section 166i(d) states that "[t]he Committee shall determine… the type of medical expert or experts who are needed to review the malpractice claim."[22] The Court is unaware of a medical expert that evaluates whether a transfer of a business' assets constitutes acting within the appropriate standards of medical care. Moreover, the statute does not give the Committee the authority to hire other nonmedical experts.[23] Thus, the mechanics of the statute do not provide a way for the Committee to review the Plaintiff's new claims in their Amended Complaint and do not apply to the Plaintiff's Motion.

¶13    Defendants' Opposition cites four cases in which failure to present medical malpractice claims to the Committee before filing in Court removes the claim from the Court's jurisdiction: *Brady v. Cintron*, 55 V.I. 802 (2011), *Lynch v. Juan F. Luis Hosp. & Med. Ctr.*, 2018 V.I. LEXIS 25 (Super. Ct. 2018), *Labeet v. Actue Alternative Medical Group*, 72 V.I. 250, 253 (Super. Ct. 2019), and *Thomas v. Blackwood*, 2017 V.I. LEXIS 55 (Super. Ct. 2017).[24] In all four of the cited cases, the plaintiffs failed to initially bring claims to the Committee "based on health care or professional services rendered, which should have been rendered by a health care provider, to a patient," before filing an action in court.[25]

¶14    In *Brady*, the defendant ("Dr. Cintron") and his assistant, ("Flores"), preformed a colonoscopy on plaintiff.[26] Plaintiff alleged that the colonoscopy resulted in a perforation in her

---

[21] *Id.* (emphasis added).

[22] *Id.*

[23] *27 V.I.C. § 166i(d)*.

[24] *Defs.' Opp'n*, at 2.

[25] *See, Brady v. Citron*, 55 V.I. 802 (V. I. 2011); *Lambeet v. Acute Alternative Medical Group*, 72 V.I. 250 (V.I. Super. Ct. 2019); *Lynch v. Juan F. Luis Hosp. & Med. Ctr.*, 2018 V.I. LEXIS 25 (Super. Ct. 2018).

[26] *Brady*, 55 V.I. 809.

colon.[27] As a result, plaintiff filed suit against Dr. Cintron, alleging, among other things, unfair trade practices due to Dr. Cintron permitting Flores to practice medicine without a license.[28] Plaintiff did not comply with the Section 166i pre filing requirements.[29] The court held that "[p]rofessional negligence, such as medical malpractice, does not constitute a deceptive trade practice."[30] The court cited to *Gomez v. Diaz* 57 S.W.3d 573, 579-80 (Tex. App. 2001), which held that medical malpractice claims cannot be recast as deceptive trade practice claims.[31] The court found that plaintiff's claims constitute medical malpractice as defined by Section 166i, and dismissed the case for failure to comply with the pre-filing requirements. Furthermore, the court in *Brady* did find that "physicians and other heath care providers are subject to claims for deceptive trade practices, *only for the entrepreneurial or commercial aspects of the profession.*"[32] The court delineates, that since plaintiff's complaint does not contain any factual allegations against the entrepreneurial or commercial aspects of defendant's practice, and merely recasts medical malpractice as a deceptive trade practice claim, the action must be dismissed for failure to comply with Section 166i.[33]

¶15     The instant case is distinguishable from *Brady* because the new claims in the amended complaint do not allege a tort or breach of contract stemming from medical care amounting to medical malpractice. Thus, the non-medical malpractice claims are not required to be filed with the committee prior to being brought in Court. Rather, Plaintiff alleges fraud stemming from the

---

[27] *Id.*
[28] *Id.* at 810 n.9.
[29] *Id.* at 809.
[30] *Id.* at 826.
[31] *Id.*
[32] *Id.* at 826. (emphasis added)
[33] *Id.* at 827.

entrepreneurial and commercial aspects of Defendant's practice, and is not required to be filed with the Committee prior to being brought in Court.

¶16    In *Lynch* the plaintiff alleged medical malpractice and wrongful death against defendants, but did not provide any proof of prefiling with the committee prior to filing their initial complaint on December 19, 2013.[34] The memorandum opinion cited by Defendant in their opposition provides the plaintiff in *Lynch* leave to amend her complaint to meet the pre-filing requirement of Section 166i.[35] In the current matter, Defendant's Opposition to Motion to Amend concedes that Plaintiff filed its initial complaint in this action in compliance with Section 166i(b).[36]

¶17    In *Lambeet v. Acute Alternative Medical Group* the plaintiff was being monitored overnight in a medical facility when an attendant left a container of hot water needed for medical testing equipment near plaintiff's bed that ultimately scalded him.[37] This caused the patient to intermittently have difficulty breathing while using said medical equipment.[38] The  plaintiff in *Lambert* did not file their complaint with the Committee in accord with Section 166i's prefiling requirements, despite the plaintiff's complaint alleging eight counts of torts, six specifically being "medical malpractice."[39] The court in *Lambert* found that the plaintiff's two claims of intentional and negligent infliction of emotional distress stemmed directly from the defendant's services as healthcare providers and professional services rendered by defendants to the plaintiff as a patient, thus falling under the section 166i prefiling requirements.[40]

---

[34] How to cite

[35] *Lynch*, V.I. LEXIS at *7; *supra* note 1.

[36] *Def.'s Opp'n to Mot. to Amend* at 1-2.

[37] *Lambeet v. Acute Alternative Medical Group*, 72 V.I. 250, 251 (Super. Ct. 2019).

[38] *Id.*

[39] *Id.* at 252.

[40] *Id.* at 253.

¶18    In contrast, in the current Motion, the additional claims against Defendants do not stem from Defendants' health care services rendered to the Plaintiff as a patient. Rather, Plaintiff's additional claims stem from information discovered about potential fraud related to the entrepreneurial or commercial aspects of Defendant's practice, completely independent of any healthcare provided to Plaintiff.

¶19    In *Thomas v. Blackwood*, the plaintiff alleges that while she was receiving physical therapy, defendant 'negligently placed" her on a treatment table, causing plaintiff to fall, exacerbating existing injuries.[41] The court in *Thomas* conducted a two step analysis to ascertain whether plaintiff's negligence claim was a medical malpractice claim.[42] First, was the defendant a health care provider; and second, was the claim a medical malpractice claim arising from health care received a health care provider.[43] In its analysis the court found that defendant was a health care provider as defined in Section 166i. Next, the court found that since the alleged negligence occurred while and because the plaintiff was receiving treatment as a patient from a covered health care provider, it was a medical malpractice claim subject to Section 166i's prefiling requirements.[44]

¶20    Applying the same two-step analysis to Plaintiff's new claims of fraudulent transfer by Defendants, the Court finds it is not a claim of medical malpractice subject to the Section 166i prefiling requirements.

<u>Justice requires that the motion to amend be granted</u>

¶21    Under V.I. R. Civ. P. 15(a)(2) "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give its leave when justice so

---

[41] *Thomas v. Blackwood*, 2017 V.I. LEXIS 55, *2 (Super. Ct. 2017)
[42] *Id.* at *5-7.
[43] *Id.*
[44] *Id.*

requires."[45] Moreover, the Court should deny a motion to amend when there exists evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]"[46] The Virgin Islands Uniform Fraudulent Transfers Act ("Act") allows claims of fraudulent transfer to be asserted at a time when "transfer or obligation was or could reasonably have been discovered by the claimant."[47] This includes claims asserted by "future creditors," as enumerated in Title 28 V.I.C. § 174.[48]

¶22     Here, the Plaintiff discovered the potential fraudulent transfer on August 15, 2023, and motioned to amend her complaint to include the claim on September 7, 2023. Plaintiff is well within the one-year limit set forth in the Act. The Court finds no undue delay, because Plaintiff was not aware of the potential fraud until August 15, 2023, and filed her motion to amend within a month of said discovery. Additionally, no evidence of prejudice or futility has been presented to the Court by the nonmoving party. Thus, Plaintiff's request to amend the Complaint will be granted.

¶23     The Court, having considered the basis of the Motion to Amend and any opposition thereto, and being advised in the premises, hereby orders as follows:

**ORDERED** that the Plaintiff's Motion is **GRANTED**; and it is further,

**ORDERED** that Plaintiff's Amended Complaint is deemed filed as of the date of this Order, and it is further,

---

[45] *Id.*

[46] *Bruni v. Alger*, 71 V.I. 71, 80-81 (Supr. Ct. 2019) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

[47] *28 V.I.C. § 179 (2023).*

[48] *Id.*

**ORDERED** that the Defendants shall have twenty-one (21) days from the date of entry of this Order by which to serve the Plaintiff with their answers to the Amended Complaint; and it is finally,

**ORDERED** that a copy of this order be served upon all Parties.

**DONE AND SO ORDERED** this _____ day of September 2024.

**HON. YVETTE ROSS-EDWARDS**
Judge of the Superior Court

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

By: _____
Court Clerk
Dated: September 6, 2024