**Evins SNIPES, Sr. and Suncha Snipes, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. A–C–86–324.

United States District Court,
W.D. North Carolina,
Asheville Division.

Feb. 7, 1989.

Scott E. Jarvis, Asheville, N.C., for plaintiffs.

Thomas J. Ashcraft, U.S. Atty., Clifford C. Marshall, Asst. U.S. Atty., Asheville, N.C. and Lawrence A. Klinger, Asst. to Director Julie Zatz, Trial Atty., U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, D.C., for defendant.

## MEMORANDUM OF OPINION

RICHARD L. VOORHEES, District Judge.

This is a lawsuit by Evins Snipes Sr. and Suncha Snipes against the United States, under the Federal Tort Claims Act, 28 U.S. C. §§ 1346, 2671–2680, alleging medical malpractice and failure to obtain informed consent by Veterans Administration (VA) doctors. The alleged tortious behavior concerns a stomach-stapling operation Evins Snipes Sr. had in 1982 to help him lose weight. He claims that the operation was negligently performed, that it has been detrimental to his health and comfort and so must be considered to have harmed him, and that his informed consent was not obtained as required by North Carolina law.

Suncha Snipes, his wife, alleges loss of consortium, a claim derivative of her husband's, which must stand or fail with his. Defendant has renewed its Motion for Summary Judgment as to those issues where summary judgment has not already been granted. Previously this matter was being handled by Chief Judge Robert D. Potter. Defendant had filed a Motion for Summary Judgment which was granted in part, as to the negligent malpractice claim, and denied in part, as to the informed consent claim by Judge Potter's Order of February 16, 1988. The first part of this Memorandum will concentrate on the claim as to which summary judgment has not been granted the United States, the informed consent claim. It will be seen that in the light of the Government's additional evidence in support of its renewed motion, and Plaintiffs' utter failure to build a case on an issue where they bear the burden of proof, summary judgment for the Government on this claim is now appropriate as well.

## I. INFORMED CONSENT

Under North Carolina statutory law, which must be applied in this case under *Erie* principles (*see Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and following cases), to the question of whether a tort has been inflicted, a plaintiff can prevail on an informed consent claim only when three circumstances are present. First, he must show that the doctor or doctors failed to acquire his consent according to procedures which met the general standards of practice of doctors similarly situated. Second, he must show that based on the information and warnings actually provided, a reasonable person would not have understood the risks and hazards involved in the medical procedures being contemplated. It is conceivable that both of these things might be true as regards Evins Snipes and the stomach-stapling surgery he had; even though defendant's doctors emphatically claim that they explained the possible consequences of the surgery completely to Snipes and that he understood them when he consented to the surgery, and even though Snipes has no evidence (except his

word against theirs that his consent was not informed), it is still within the realm of possibility that a finder of fact (which in this action would be the Court) might believe him. However, Plaintiffs' case must necessarily fail on the third prong of the test.

N.C.Gen.Stat. § 90–21.13(a)(3) provides that there shall be no recovery for lack of informed consent where:

A reasonable person, under all the surrounding circumstances, would have undergone such treatment or procedure had he been advised by the health care provider in accordance with the provisions of [the first two tests of] this subsection.

This establishes an objective test. It makes no difference whether the actual patient would have refused the surgery if fully informed; the question is whether a reasonable person, standing in his or her shoes, would have done so. (Plaintiffs cite *McPherson v. Ellis*, 305 N.C. 266, 287 S.E. 2d 892 (1982), as standing for the proposition that a subjective test is called for. However, that case dealt with an operation performed before § 90–21.13 took effect, and the opinion conceded that for surgery performed after July 1, 1976, the objective test would apply, as per the statute. 287 S.E.2d at 897 n. 2.) To see what a reasonable person would have done in his place, a review of Evins Snipes' circumstances at the time he elected to have the surgery is in order.

"[I]n June of 1982, Plaintiff, Evins Snipes Sr. weighed 444 pounds and at that weight was grossly obese. Mr. Snipes had a history of physical maladies arising from his overweight condition, and of psychological problems both arising from and contributing to his overweight condition." *Plaintiffs' Brief In Opposition To Defendant's Motion For Summary Judgment*, October 22, 1987. Snipes felt that the stomach-stapling surgery was his "last resort." *Deposition of Evins Snipes Sr.*, at 42. One of his treating physicians described his condition as being that of "morbid obesity." *Deposition of Dr. David Locke Glenn, Jr.*, at 12. Another stated that "Mr. Snipes was very aggressive in his insistence that I accept him as a candidate for obesity surgery because he was very worried about developing heart trouble, hypertension, and diabetes...." *Declaration Of Dr. Amir Ali Neshat*, at 5. An expert who had performed more than 700 operations for morbid obesity declared that in view of his medical history, Snipes had an "urgent indication for this operation." *Declaration of Dr. Joseph A. Buckwalter*, at 4. Morbidly obese patients such as Snipes "*must* lose weight because their massiveness poses a life-threatening risk in the form of hypertension, heart attacks, diabetes and pulmonary insufficiency." *Id.* at 2 (emphasis added).

There is no indication anywhere in the record that Snipes was more likely than the typical patient to suffer complications, or that he was for any other reason a poor candidate for this surgery. In fact, it appears that if ever there was a person who could be called the perfect candidate for gastric stapling, Evins Snipes Sr. was that person. Plaintiffs stated in their original complaint that VA doctors told Snipes in 1982 that "his life expectancy without the gastric stapling procedure would be five to six years...." *Allegation of Fact No. 13 of Plaintiffs' Complaint*. This prognosis was never disputed by Plaintiffs, either by the testimony of their expert witnesses or in their pleadings and other materials. Since "five or six years" after 1982 would obviously be sometime in 1987 or 1988, for all we know Evins Snipes Sr. would not be alive today if he had not had this operation. By his own admission, it was a success to the extent that his weight fell from 445 pounds to 360. *Deposition of Evins Snipes Sr.*, at 6. (Although the Court does not explore the point in detail, it not being necessary to decide the instant motion, this strongly tends to suggest that Snipes suffered no harm as a result of the operation, but rather was helped by it; in which case his claim also must fail.)

In view of all this, it is not surprising that the Government states that "a reasonable person of Mr. Snipes' size, with a lengthy history of inability to lose weight, and presenting symptoms which included

chest pains, shortness of breath and muscle and joint aches would have consented to the gastric stapling procedure that was performed on Mr. Snipes on June 23, 1982." *Declaration of Dr. Joseph A. Buckwalter,* at 4. Since Snipes was an ideal candidate for this operation, to say that he could have intelligently or reasonably refused it if better informed is to say that every other person who was a candidate for it at about the same time should have refused it as well! In turn, this would imply that the medical profession was perpetrating massive fraud, or at least massive bad judgment, in recommending this operation to thousands of patients. It suggests that the patients could have prescribed better treatment for themselves than their doctors were prescribing for them. To prove all of this would obviously have been a very tall order, probably requiring some expert testimony at the very least. Instead, Plaintiffs have not even made a start.

It is true that summary judgment will not be lightly granted where there is a question of reasonableness, however objective, in the standard, by analogy to the latitude given juries in applying the "reasonable man" standard in ordinary negligence cases. That is not to say that it may never be granted, however. Where the forecast of evidence includes nothing capable of rising to the standard, summary judgment must be granted.

The only evidence offered to rebut the statements Dr. Buckwalter and Snipes' treating physicians made, that to have the operation was an intelligent and reasonable decision at the time, is Snipes' own statements. In his *Affidavit* of December 27, 1988, Snipes states, "I do not believe that any person who understood the risk of lack of success, or which [sic] understood the potential risks and complications of the surgery would ever have consented to having the surgery performed on them." *Affidavit of Evins Snipes Sr.,* at 2–3. He also states that "[h]ad I known prior to the surgical procedure performed on me ... of the various complications which were at risk ... I neither would have nor could have consented to have this surgery." *Id.*

at 2. Under the objective test, what plaintiff himself would have done is neither here nor there. Nor does Snipes' non-expert and self-interested opinion as to what others would have reasonably done in his place carry evidentiary weight. Plaintiffs have simply failed to produce any evidence other than Snipes' bald assertions to make out even a *prima facie* case for lack of informed consent, let alone overcome the mountain of evidence Defendant has compiled. Summary judgment for Defendant must be granted. However, that is not the end of this matter.

## II.  RULE 11 SANCTIONS

The conduct of Plaintiffs' attorney in this matter raises serious questions. In view of the extremely weak character of the evidence for Plaintiffs' case, the Court believes that this lawsuit should never have been brought. Originally, Plaintiffs' complaint contained a claim for medical malpractice. Judge Potter granted summary judgment for the Government, remarking, "Plaintiff has produced no evidence of negligence on the part of the VA physicians. To the contrary, Plaintiff's own experts testified that they found no evidence of negligence." *Order* of February 16, 1988, at 2. By consulting a standard reference work, a reasonably diligent attorney could have found out that without supporting expert testimony, it was unlikely that even a *prima facie* case could be made out. "The plaintiff must establish the applicable standard of care required.... In most cases, the standard of care must be established with expert testimony by other practitioners in the same field.... Where the evidence of lack of ordinary care is *patent* and ... require[s] only *common knowledge and experience* to understand and judge it, expert testimony is not required." *North Carolina Prima Facie Desk Manual for Civil Actions,* North Carolina Academy of Trial Lawyers (1981 Ed.) (emphasis added). In other words, absent special circumstances where the negligence is so obvious anyone can see it—clearly not the case here—expert testimony is required. Case law is in accord; *see, e.g.,*

*Ballenger v. Crowell*, 38 N.C.App. 50, 247 S.E.2d 287 (1978). Counsel for Plaintiffs should have obtained a written commitment from at least one qualified expert to supply such testimony at trial, but did not.

Things are hardly better when it comes to Plaintiffs' claim based on lack of informed consent. As discussed *infra*, there is scarcely a scintilla of evidence in the record to support such a claim. Of greater concern, however, is the nature of the arguments counsel put forth in support. Plaintiffs' pleadings repeatedly emphasize that Snipes wishes he had never had the operation, and that had he known in advance of the possible consequences, he would never have agreed to it. But this implies a subjective, not an objective, standard. Even the case Plaintiffs cited as supporting a subjective standard, *McPherson v. Ellis, supra*, stated in a footnote that the subjective standard would not apply after July 1, 1976. In citing a holding which had not been good law for more than ten years, Plaintiffs' counsel either engaged in deficient and errant research, or suffered his brief to mislead this Court as to the applicable standard. No case was mentioned or made for expanding or modifying existing law.

Plaintiffs' counsel seems to have finally realized, or admitted, that an objective test for whether Plaintiff Snipes would have had the medical procedure anyhow is required, when in his *Memorandum* of December 27, 1988, he asserted that "in his [Plaintiff Snipes'] opinion any person who understood the potential risks and complications of this surgical procedure would not have had it performed." *Memorandum Of Plaintiff Opposing Defendants' Renewed Motion For Summary Judgment*, at 1. The mere assertion of an opinion by an interested party concerning such an issue, unsupported by expert testimony or any other extrinsic evidence, scarcely qualifies as a scintilla. Even if it did, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which [the finder of fact] could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The test is what information was available to the attorney at the time he signed the pleading in question, together with the evidence a reasonable forecast would expect to find during discovery. In this case, the requisite quantity and quality of evidence was not available to plaintiffs' counsel at the time he signed the complaint, nor has it surfaced during extensive discovery. Plaintiffs' counsel argued at the summary judgment hearing that plaintiffs' witnesses changed the tune of their verbal representations after the filing. While unfortunate for counsel, that fact, if true, is a burden counsel foreseeably bore when he filed the complaint without requiring the supporting testimony to be committed to writing prior to filing.

Given that for the informed consent claim, as indeed for the negligence claim, there was no evidence worthy of the name except Evins Snipes' unsupported assertions that the Government had done him wrong, counsel for plaintiffs either knew or should have known that there was no case. The original complaint should never have been filed.

It should be noted that virtually all published materials in professional journals and the continuing legal education materials which the Court has perused are replete and unanimous with the directive that plaintiffs' counsel in medical malpractice actions come to court armed with sound written medical opinions to support the particular claim—absent which counsel may be expected to stare into the maw of an attorney malpractice action, not to mention Rule 11 sanctions. *See*, for example, *North Carolina Tort Practice Handbook*, Wake Forest University School of Law, Continuing Legal Education Program, (rev. ed. 1985): "[a]n allegation of professional malpractice may seriously impair the ability of the person charged to earn his living. Therefore, malpractice litigation with its attendant publicity, should be instituted only when there are solid grounds and when efforts to reach a reasonable settlement appear futile. Attorneys who engage in malpractice settlements and litigation

must stay abreast of current developments or they may well be the target of a malpractice action themselves." *Id.* at 171.

Rule 11 of the Federal Rules of Civil Procedure states that all pleadings and motions shall be signed by an attorney of record, and that such signature certifies that it "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." At one time it was held that only actual bad faith on an attorney's part constituted a violation of Rule 11, but this is no longer the accepted view. The leading case is *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985):

> ... we hold that a showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, sanctions shall be imposed against an attorney ... where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is warranted ... [or] where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.

762 F.2d at 253–54. Although it appears that the Fourth Circuit has not considered the matter, the unanimous view of those Circuits which have done so is that the "reasonable inquiry" rule was established by the 1983 Amendments to the Federal Rules of Civil Procedure. *See generally* cases cited in Moore's Fed. Practice (1988 Ed.), ¶ 11.02[3], n. 5. The public policy concerns behind the 1983 amendment to Rule 11 and the interpretation quoted, especially in the light of the malpractice insurance crisis and the horrendous cost of defending potentially frivolous lawsuits, is obvious. There is no reason to believe that the Fourth Circuit would diverge from the unanimity of the others.

It appears to the Court that a reasonable inquiry into existing law by Plaintiffs' counsel would have revealed to him that there was no chance of success on the merits, given the facts of his clients' situation. Indeed, the conclusion that this was a classic nuisance suit, filed in the hope that defendant would settle for some amount rather than undertake the expense of defending it, seems inescapable. Under Rule 11 as amended, it is the duty of counsel to reject such suits and sign no such complaint.

Accordingly, the Court moves *sua sponte* to impose sanctions as provided for by Rule 11 upon Scott Jarvis, Esq., attorney of record for Plaintiffs, for filing a complaint not well grounded in law or fact. By the Order issued simultaneously herewith, Mr. Jarvis is ordered to appear at the next regularly scheduled motions hearing of this Court, to show cause why he should not be subject to such sanctions; and Julie Zatz, Esq., attorney of record for the United States, is ordered to submit for the record an accounting of attorney's fees and other costs incurred by the defendant in defending this action.

## JUDGMENT AND ORDER

FOR THE REASONS stated in the Memorandum of Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. Defendant's renewed motion for summary judgment is ALLOWED and this case is hereby DISMISSED in its entirety; and

2. Attorney Scott Jarvis is ORDERED to appear at the next regularly scheduled motions hearing of this Court to show cause why he should not be subject to Rule 11 sanctions. Attorney for the United States, Julie Zatz, is ORDERED to submit for the record an accounting of attorney's fees and other costs incurred by the Government in defending this action.

THIS the 6th day of February, 1989.