**KATHLEEN SAMUEL, Appellant**

**v.**

**GOVERNMENT OF THE V.I., DR. CHERYL WADE,**
**and DR. XYZ, Appellees**

D.C. Civ. App. No. 2002/61

District Court of the Virgin Islands

Division of St. Croix

November 22, 2006

621

PAMELA LYNN COLON, ESQ., St. Croix, U.S.V.I., *for Appellant.*

WILFREDO GEIGEL, ESQ., St. Croix, U.S.V.I., *for Appellees.*

GOMEZ, *Chief Judge of the District Court of the Virgin Islands;* FINCH, *Judge, District Court of the Virgin Islands;* and SWAN, *Judge of the Superior Court of the Virgin Islands, Sitting by Designation.*

## MEMORANDUM OPINION

(November 22, 2006)

Following surgery and subsequent injuries to her arm, Kathleen Samuel ("Samuel" or "Appellant") filed the underlying medical malpractice claim in the Superior Court, naming as defendants the Government of the Virgin Islands, Dr. Cheryl Wade and other unidentified physicians. The appellees moved for summary judgment, on grounds Samuel's April 1999 claims, arising from her August 1996 injuries, were barred by the applicable statute of limitations and by her failure to comply with the notice requirements of the Virgin Islands Tort Claims Act. The trial court granted the appellees' motion for summary judgment, and Samuel timely appealed, arguing:

1. There was a material question of fact regarding the accrual date of the statute of limitations, precluding summary judgment;

2. In keeping with counsel's duty under FED. R. CIV. P. 11 to file only meritorious claims, an expert opinion of malpractice constitutes "discovery" of that claim for statute of limitations purposes;

3. Even if the malpractice claim accrued prior to Feb. 1, 1999 when she obtained an expert report, the statute of limitations was equitably tolled due to appellees' affirmative representation to Samuel that her condition was "normal;"

4. The statute of limitations was statutorily tolled because Appellees knew of their malpractice but failed to advise Samuel of that fact;

5. Samuel substantially complied with the notice provisions of the V.I. Medical Malpractice statute.

As more fully explained below, the trial court's grant of summary judgment will be affirmed.

## I. STATEMENT OF FACTS & PROCEDURAL POSTURE

Samuel sought treatment for a cyst on her arm from Appellee Dr. Cheryl Wade ("Dr. Wade"), a doctor employed at the Juan F. Luis Hospital (formerly St. Croix Hospital). On August 21, 1996, she was admitted to the hospital, where Dr. Wade performed surgery on Samuel's arm.

Following surgery, Samuel contends Dr. Wade instructed her to remove the dressing in three to four days and replace it with a band-aid. Samuel was also instructed to return for a follow-up appointment. The parties dispute whether she was to return on September 2 or September 5, 1996. However, within two days of the surgery, on August 23, Samuel developed complications at the site of the wound, requiring her to seek additional medical attention on several occasions. Following her treatment at the Emergency Room, Samuel was referred to a different physician for physical therapy, which was conducted through November 12, 1996.

On April 30, 1998, after consulting with an attorney, Samuel consulted a medical expert, Dr. Sylvia N. Payne ("Dr. Payne"). Dr. Payne provided a report to Samuel on October 7, 1998. [Joint Appendix ("J.A.") at 75-81]. However, she offered no opinion regarding whether Samuel's injuries resulted from medical malpractice. Samuel later consulted another medical expert, Dr. Julius Garner ("Dr. Garner"), who entered an expert report on February 1, 1999 opining as follows:

> The patient experienced a complication of this surgery when she developed a hematoma in the wound along with inflammation. Since the culture was negative the inflammation may have been from [sic] the irritation from the clot instead of a bacterial infection.
>
> It was reasonable to remove the sutures and the hematoma on 8/25/96, but the wound should not have been re-sutured. However, since these sutures were removed the next day, doing this probably did not significantly add to the problem.
>
> Based on my knowledge and experience, I suspect this wound went on to heal, perhaps leaving a larger scar than expected, but no

permanent disability. Usually the signed surgery permit warns of such possible complications.

[J.A. at 84]. Subsequently, Dr. Garner submitted a letter to Samuel's attorney in which he further opined that Samuel's injuries had resulted from medical malpractice. [J.A. at 36]. Samuel contends that Dr. Garner's February 1999 report was her first indication that she had a claim for medical malpractice and, therefore, marks the date of discovery of that claim.

On March 1, 1999, Samuel filed a notice of intent to sue with the V.I. Malpractice Review Committee ("MMAC") and also served such notice on the governor of the V.I. and the V.I. Attorney General. However, a proposed verified complaint was not submitted to the committee until March 31, 1999, a delay which Appellant contends resulted from clerical error.[1] Samuel formally filed her medical malpractice claim in the trial court on June 8, 1999—just short of three years after the surgery. The government thereafter moved for summary judgment, on grounds Samuel had failed to comply with the notice provisions of the V.I. Tort Claims Act, V.I. CODE ANN. tit. 33, § 3409 *et seq.* ("VITCA"). Samuel opposed the motion.

On March 1, 2002, the trial court granted Appellees' motion for summary judgment, concluding that Samuel had not complied with the 90-day notice period in the VITCA and had not shown a reasonable excuse for her untimely notice. The court additionally held that Samuel was not bound to defer filing her claim until an expert medical opinion had been obtained and further rejected her argument that the 1999 expert opinion marked the accrual date of her claim. Following denial of a reconsideration motion, Samuel filed this timely appeal.

## II. DISCUSSION

### A. Jurisdiction & Standard of Review

We exercise jurisdiction to review the final judgments of the Superior Court in civil matters, under our authority provided in The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004),

---

[1] In light of our determination herein, we need not reach the appellant's argument that her March 1, 1999 filing with the MMAC substantially complied with the statute, notwithstanding the failure to append a proposed complaint to her initial notice.

which repealed 4 V.I.C. § § 33-40, and reinstating appellate jurisdiction provisions), and Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[2]

We conduct a plenary review of orders granting summary judgment, applying the same standard to which the trial court is held. See *Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 233 (3d Cir. 2002). In conducting such review, we must also consider questions of law or interpretation of statute *de novo;* however, we afford the more deferential clear error review to factual determinations. See *Gov't of the V.I. v. Albert*, 89 F. Supp. 2d 658, 663, 42 V.I. 184 (D.V.I. App. Div. 2001); *Max's Safood Cafe ex rel. Lou-Ann, Inc. V. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999).

## B. Whether There Was a Material Question of Fact, Precluding Summary Judgment.

Appellant challenges the trial court's grant of summary judgment in favor of the appellees, on grounds the court improperly decided that her claim was barred under the applicable statute of limitations, where there remained a genuine dispute on the accrual date of that claim.

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine dispute exists if there are material facts upon which a reasonable jury could rule in favor of the non-movant or which could be resolved in favor of either party. *Mingolla v. 3M*, 893 F. Supp. 499 (D.V.I. 1995); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To be material, such a fact must be determinative of the case, or likely to affect its outcome. See *Anderson*, 477 U.S. at 248. In determining the existence of a genuine issue of fact, the court must consider all evidence in the light most favorable to the non-moving party

---

[2] The complete Revised Organic Act of 1954 is found at 48 U.S.C. § § 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

and give the non-movant the benefit of all reasonable inferences. *White v. Westinghouse*, 862 F.2d 56, 59 (3d Cir. 1988); *Meritcare, Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 223 (3d Cir. 1999) (noting that the facts and all inferences that may be drawn therefrom must be viewed in the light most favorable to the non-movant).

While it is true that a party seeking summary judgment bears the initial burden to establish the absence of a genuine issue of material fact in dispute, see *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), that burden then shifts to the nonmoving party to establish a genuine issue of material fact to avoid summary judgment. FED. R. CIV. P. 56 advisory committee notes (1963 amend.); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366 (3d Cir. 1990). This Circuit has noted, however, that the burden usually borne by the defendant to establish the statute of limitations defense shifts to the plaintiff where the plaintiff "seeks to establish that the discovery rule should apply to his or her particular case." *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985) (noting that burden-shifting also applies where plaintiff does not file within the statutory period and claims tolling by fraud, equitable estoppel or the discovery rule).

Samuel argues summary judgment was improper where the appellees failed to come forward with evidence to refute her assertion that she did not first discover her claim until February 1, 1999, when she obtained an expert opinion. This argument is related to appellant's additional arguments that her claim should not be deemed to have been discovered, for statute of limitations purposes, until she obtained an expert opinion of malpractice in February 1999 and that her notice of intent to sue was timely made after she obtained that expert opinion. Therefore, we consider these arguments together here.

### 1. Whether there were remaining fact disputes regarding the accrual date of the claim.

As a condition precedent to filing a cognizable medical malpractice claim which names the government of the Virgin Islands or its employees for acts done within the scope of their employment, Samuel was required to comply with the filing requirements of both the V.I. Tort Claims Act, V.I. CODE ANN. tit. 33, §§ 3408-3409 ("VITCA") and the Medical

Malpractice Act, codified at 27 V.I.C. § 166 ("MMA"); *Saludes v. Ramos*, 744 F.2d 992, 996-97 (3d Cir. 1984) (noting that, where medical malpractice claim is against government actors, the claimant must comply with both statutes, which address differing concerns).

▋Under the VITCA, litigants must file such claims "within ninety days after the accrual of such claim unless the claimant shall within such time file a written notice of intention to file a claim therefor, in which event the claim shall be filed within two years after the accrual of such claim." 33 V.I.C. § 3409(c). An exception to the stringent filing requirements is provided in the same section, permitting claims filed within the two-year limitation period, despite the failure to file a timely notice of intent to sue, upon a showing of "reasonable excuse for the failure to file the notice of intention," where the affected department had actual knowledge of the facts constituting the claim and where the government has not been prejudiced by the delay. *Id.* Because the VITCA establishes the conditions under which the government waives its sovereign immunity, it is regarded as mandatory and jurisdictional, and the failure to adhere to its requisites deprives the trial court of jurisdiction to consider tort claims burdening the government. *See Saludes*, 744 F.2d at 996-97; *see also, United States v. Kubrick*, 444 U.S. 111, 117, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979) (noting that the statute of limitations for claims against the government represents a balance struck by the Legislature, and courts "are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims," nor can courts extend the limitations provided in those statutes beyond what the legislature intended).

▋The MMA requires that a medical malpractice claim be commenced "within two (2) years from the date of the alleged act, omission or neglect" or within two years of the last treatment, in cases where there was continuous treatment for the same illness, injury or condition giving rise to the malpractice claim. 27 V.I.C. § 166d(a). This jurisdiction additionally applies the equitable discovery rule, which tolls the statute of limitations until the plaintiff "knows, or in the exercise of reasonable diligence should have known, (1) that he has been injured, and (2) that his injury has been caused by another's conduct." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 152 (3d Cir. 1998), *cert. denied*, 526 U.S. 1114, 119 S. Ct. 1760, 143 L. Ed. 2d 791 (1999); *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991) (construing Pennsylvania law and applying

627

the discovery rule in connection with a medical malpractice cause of action); *Phillip v. Taylor*, 18 V.I. 437 (D.V.I. 1981) (applying discovery rule to accrual of medical malpractice claim).

■ Under this standard, it is not required that the plaintiff know "the exact medical cause of the injury; that the injury is due to another's negligent conduct; or that he [or she] has a cause of action." *Bohus*, 950 F.2d at 924-25 (citations omitted); *see also Kubrick*, 444 U.S. at 122-23. As the *Bohus* Court explained, "Every plaintiff has a duty to exercise 'reasonable diligence' in ascertaining the existence of the injury and its cause. Although '[t]here are very few facts which [reasonable] diligence cannot discover, ... there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful.'" *Bohus*, 950 F.2d at 925 (citations omitted).

In granting summary judgment, the trial court held that, given the discoloration and swelling to her arm that began immediately after treatment and persisted thereafter, Samuel knew or should have known of her injury in August 1996 and did not need a doctor to apprise her of that fact. [J.A. at 8-9]. Therefore, the court held, it was not a requirement that the appellant receive a medical expert opinion of malpractice before the statute of limitations began to run. *Id.* The trial court further held that, even if the appellant's claim was liberally construed to have accrued on April 30, 1998, when she consulted her first medical expert, Dr. Payne, her claim was still untimely because of her failure to file notice of the claim within 90 days thereof or to establish good cause for such failure. Applying the foregoing precepts to the appellant's challenge, we conclude the trial court's grant of summary judgment was proper.

■ At the outset, we readily reject the appellant's argument that the accrual date was not an issue amenable to resolution as a matter of law, and was required to go to the jury. Although the commencement of the statute of limitations is ordinarily a question of fact, particularly where resolution of that question depends on the facts surrounding the parties' discovery of the injury, the question may be decided as a matter of law where the underlying facts are not disputed and where reasonable minds cannot differ. *See Bohus*, 950 F.2d at 925; *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 307-08 (3d Cir. 2001) ("Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitation period be determined as a matter of law."). This is

not a case where the underlying facts are disputed in any material respect.

We agree with the trial court's determination that the appellant's claim was time-barred, for failure to comply with the 90-day notice requirement of the VITCA. Nonetheless, we will briefly discuss the appellant's tolling arguments.

Here, the appellant experienced swelling and discoloration just two days after the surgery, which continued to worsen. Her wound initially became swollen and blue in color, and she contacted Dr. Wade to notify her of that fact. Samuel contends Dr. Wade assured her that the changes in her wound were "normal" and told her not to worry. However, Samuel's condition continued to worsen and, despite being assured by Dr. Wade that her condition was normal, Samuel again sought additional medical attention in the emergency room when, on August 25, 1996, she found the wound to be green in color and very swollen. An emergency room physician removed her stitches and, after administering treatment, resutured the wound. However, after her arm again began to swell and turn green on the following day, Samuel once again returned to the Emergency Room, where a physician removed her stitches. A hematoma was removed and Samuel was also diagnosed as having an infection at the site of the surgery. As a result, the wound was cleaned and Samuel treated with antibiotics, and she was required to return to the emergency room daily for three consecutive days to continue treatment.

That Samuel did not accept her condition as normal is evidenced by the fact that she later returned to the hospital on two separate occasions to seek further medical attention. Moreover, Samuel underwent physical therapy with an orthopedic surgeon from August 29, 1996 through November 4, 1996. [See Pl's Exh's to Opp'n to Mot. for Sum. Judg., J.A. at 75]. She also noted that during that time she experienced "stinging" or shocking sensations to her hand and experienced increased scarring and numbness to the area.

Given these events, the trial court correctly concluded that Samuel should have fully appreciated that she had suffered injury from August 1996, when she experienced obvious complications from the surgery, requiring further care and treatment, and even a referral for physical therapy. Moreover, despite these events, Samuel waited until April 1998 to consult her first medical expert, Dr. Payne. Even after doing so, Samuel did not file her notice of intent to sue or her complaint with the

629

court until March and June 1999, respectively, after visiting a second expert.

The record does not support a finding that Samuel's claim accrued beyond, at the latest, November 4, 1996, when she concluded physical therapy treatment for the same injury. *See* 27 V.I.C. § 166d(a) (continuous treatment exception). However, even viewing Samuel's claim liberally and regarding the accrual of her claim from April 1998, when Samuel consulted Dr. Payne, that would not save her claim where she waited over one year later before filing her notice of intent to sue.

Appellant urges us to regard February 1, 1999 as the accrual date, when she obtained an expert opinion that malpractice had occurred. We find that argument untenable under prevailing standards in this jurisdiction.

As our courts have repeatedly made clear, the established standard for determining discovery of an injury does not require that a plaintiff know that malpractice has occurred. *See Kubrick,* 444 U.S. at 117-122; *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380 (3d Cir. 1994); *Warner v. Ross,* 164 Fed. Appx. 218 (3d Cir. 2006). In *Kubrick,* the U.S. Supreme Court definitively held that a malpractice claim accrues at the time the plaintiff becomes aware of his injury and its probable cause and not at a later time when he also knows that the injury also resulted form malpractice. *Kubrick,* 444 U.S. at 118-123. The *Kubrick* Court expressly rejected the view that the accrual date may be based on when the plaintiff obtains a medical opinion that malpractice likely occurred, noting that would be an unworkable rule. *Id.* In that regard, the Court stated:

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed

to live up to the minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff.

*Kubrick,* 444 U.S. at 122-23.[3]

In *Oshiver,* faced with an issue similarly implicating the discovery rule under an analogous statute, the court of appeals stated: "The question arises whether a plaintiff's discovery of the actual, as opposed to the legal, injury is sufficient to trigger the running of the statutory period. ... We have in the past stated that a claim accrues ... upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver,* 38 F.3d at 1386.

We continue to adhere to the well-established view in this jurisdiction that accrual of a claim for medical malpractice is not based on the time a medical opinion is obtained, where the facts are clearly discernible to the injured party. Relying on the date an expert opinion of malpractice was obtained, as Appellant urges, would effectively impose a standard that measures discovery of an injury from the date malpractice is affirmatively established, or by the identification of the legal wrong. That standard is contrary to our precedent, and we reject it here.

■ Having determined the accrual date of the appellant's claim was in 1996, immediately after her injury manifested itself, we agree with the trial court's conclusion that Samuel's 1999 civil action was time-barred. Even under the most liberal view, the accrual date for Samuel's claim could not extend beyond April 1998, when she consulted a medical expert for the first time. Therefore, her March 1999 notice of intent to sue far exceeded the 90-day requirement under the VITCA, and the trial court had no jurisdiction to entertain that claim.

## 2. Whether Counsel's Duty Under Rule 11 Precluded Claim Until Medical Expert Opinion of Malpractice Was Obtained.

■ For similar reasons, we reject the appellant's related argument that the statute of limitations must give way to the duties of diligence imposed on attorneys under Federal Rule of Civil Procedure 11.

Appellant urges this Court to find that the statute of limitations and discovery rule must be read in concert with Rule 11, which requires litigants to file claims only after making reasonable inquiry into the facts

---

[3] Appellant's contention that *Kubrick* stands for the contrary proposition is not persuasive.

and ensuring that "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(2), (3). This duty to ensure nonfrivolous arguments and evidentiary support for claims, Appellant argues, precluded her from filing an earlier complaint and warrants a finding that the discovery rule was not triggered until she obtained an expert opinion of malpractice on February 1, 1999. For that proposition, Appellant refers us to several decisions from Pennsylvania, the District of Columbia, and North Carolina. *See Blancato v. St. Mary Hospital*, 1993 U.S. Dist. LEXIS 9840 (E.D. Pa. 1993) (deciding motion for Rule 11 sanctions, after plaintiff did not cooperate in discovery, ignoring requests by the defendant and the court to produce expert evidence and after much delay voluntarily dismissed the action two years after it was instituted, rather than submit an expert report as ordered); *Warren v. Women's Medical Center of Washington, D.C.*, 1987 U.S. Dist. LEXIS 16933 (D.D.C. 1987) (finding counsel's inquiry unreasonable where counsel had three years to file action and did not procure any opinion within that time and where there was "nothing in the record to suggest that the plaintiff was required to rush to file this action before the applicable statute of limitations had expired"); *Snipes v. United States*, 711 F. Supp. 827, 830 (W.D.N.C. 1989) (holding plaintiff made no reasonable inquiry in filing malpractice action based on lack of informed consent, where there were no facts asserted, to establish a prima facie case based on that theory, and the only evidence was the patient's statement that he would not have had the surgery). Given the specific facts with which the various courts were faced, we find those cases to be unhelpful to the issue at hand and, in any case, unpersuasive.

Significantly, we also cannot ignore the important policies undergirding the enactment of statutes of limitations, nor the jurisdictional nature of the MMA and the VITCA. As the Court noted in *Kubrick*, "Statutes of limitations ... represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them. These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the

search for truth may be seriously impaired by the loss of evidence." *Kubrick*, 444 U.S. at 117. This policy becomes even more important where the claim names the government, because the government conditions its waiver of sovereign immunity on satisfaction of the statute of limitations set forth in the statute, which are intended to encourage the prompt presentation of claims. *Id.* at 117-18.

In sum, the appellant's argument would turn the discovery rule and the statutes of limitations on their head by permitting actions for an indefinite period of time after the actual injury, so long as an expert opinion is not obtained. We reject that argument.

## C. Fraudulent Concealment

Appellant further argues her claim was equitably and statutorily tolled because she was told by the physician two days after surgery that her condition was "normal."

The MMA tolls the two-year statute of limitations "for any period during which the health care provider had actual knowledge of any act, omission or neglect or knowledge of facts which would reasonably indicate such act, omission or neglect which is the basis for a malpractice claim and failed to disclose such fact to the patient." 27 V.I.C. § 166d(a); see also *Bohus*, 950 F.2d at 924-25 (recognizing fraudulent concealment as an equitable doctrine).

█ As the court of appeals recently noted, the relevant inquiry in determining whether a defendant in a malpractice action fraudulently concealed facts within his knowledge is whether there is evidence that the defendant took affirmative steps to conceal the wrongful conduct and whether there was actual concealment. *See Warner v. Ross*, 164 Fed. Appx. at 220-21 (citing *Payne v. Gov't of the V.I.*, 44 V.I. 213, 217 (Super. Ct. 2002) ("[T]he query in fraudulent concealment cases is whether there is evidence that the defendant took affirmative steps to conceal the wrongful conduct."). A "physician's assurances which lull a patient into a false sense of security may [also] constitute fraudulent concealment." *Bohus*, 950 F.2d at 926.

In *Warner*, the Court rejected the suggestion that the physician's statements that the appellant's symptoms would soon subside constituted fraudulent concealment where the patient's symptoms made it unreasonable to rely on such assurances. The Court noted, "reliance upon the word of one physician when the patient's own common sense should

lead one to a different conclusion is unreasonable." *Warner*, 164 Fed. Appx. at 221 (holding that "the fraudulent concealment doctrine cannot serve to toll the statute of limitations when, using reasonable diligence, [the patient] should have known of her injury and its cause). This case similarly presents no basis for applying the fraudulent concealment doctrine.

In this instance, the appellant asserts only that, upon contacting Dr. Wade on August 25 (two days after surgery) to report the discoloration and swelling to her arm, Dr. Wade assured her that her symptoms were "normal." However, here, as in *Warner*, Samuel was faced with a number of events and circumstances that should have put her on notice that her condition was anything but normal. Under those facts, reliance on Dr. Wade's statement, even three years after the onset of symptoms, cannot be deemed reasonable under the circumstances.

## III. CONCLUSION

For all the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of the appellees.