Mary BERRY and Normil Berry

v.

Peter CURRERI, Appellant.

No. 86–3592.

United States Court of Appeals,
Third Circuit.

Argued Dec. 9, 1987.

Decided Jan. 26, 1988.

Diane Trace Warlick (argued), Law Offices of R. Eric Moore, Christiansted, St. Croix, Virgin Islands, for appellant, Peter Curreri.

Henry V. Carr, III (argued), Murnan and Carr, St. Thomas, Virgin Islands, for appellees, Mary Berry and Normil Berry.

Before GIBBONS, Chief Judge, and STAPLETON and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Peter Curreri, a physician practicing as a gynecologist in the Virgin Islands, appeals from a judgment in favor of Mary Berry and Normil Berry in their medical malpractice case against him, and from the denial of his post-trial motions for judgment notwithstanding the verdict, for a new trial, and for a remittitur. We conclude that a new trial should have been granted, and thus we will reverse.

### I.

Mary Berry consulted Dr. Curreri in 1980 with respect to a gynecological problem, and was advised by him that she should undergo a total abdominal hysterectomy. That surgery was performed by Dr. Curreri at Knud Hansen Memorial Hospital, St. Thomas, Virgin Islands, on September 2, 1980. Within three or four days after the surgery, Mary Berry developed severe abdominal pain. Around September 11, a quantity of fecal matter burst through her vagina. She also developed an elevated temperature. Dr. Curreri diagnosed her condition as a recto-vaginal fistula. She was released from the hospital on September 15, 1980. Thereafter she was admitted to Pavis Hospital in Santurce, Puerto Rico, where her condition was accurately diagnosed as a small bowel fistula. The fistula was surgically located and repaired.

Pursuant to the Virgin Islands Health Care Providers Malpractice Act, 27 V.I.C. § 166i, Mary Berry and her husband timely filed with the Medical Malpractice Action Review Committee in the Office of the Commissioner of Health (the Committee) a proposed complaint in which she sought full damages and in which Mr. Berry sought damages for loss of consortium. The allegations of negligence against Dr. Curreri in the proposed complaint are as follows:

24. The defendant was negligent in failing to possess and employ the skills, training and knowledge which he proffered to possess or in negligently failing to exercise such skills, training and knowledge on behalf of the plaintiff Mary Berry.

25. The defendant was negligent in his diagnosis of the plaintiff Mary Berry's condition and should have known or had reason to know, that the discharge from the plaintiff's vagina was from a small bowel rather than a recto-vaginal fistula.

26. The defendant was negligent in that he failed and neglected to provide proper treatment and care of the plaintiff Mary Berry's medical condition.

27. The defendant was negligent in that he released plaintiff Mary Berry from the hospital in direct contravention of the medical indications she evidenced at the time.

28. The defendant's failure and neglect to use due, reasonable or proper skill and care in performing his services on behalf of plaintiff Mary Berry was so gross as to evidence a willful and wanton disregard for the plaintiff Mary Berry's health, welfare and safety.

Nowhere in the proposed complaint is any reference made to any negligence on Dr. Curreri's part in diagnosing the need for an abdominal hysterectomy, or in performing that surgery. The quoted allegations refer solely to the diagnosis and treatment of the post-operative complications from that surgery.

Pursuant to 27 V.I.C. § 166i, the Committee selected Dr. Maximo Ruiz, a St. Croix gynecologist, to render the expert medical opinion on the complaint. He reviewed the proposed complaint and medical records obtained from Knud Hansen Memorial Hospital and Pavia Hospital, and after reciting Mary Berry's course of treatment, opined:

I have to conclude:

1. that this patient had an excellent medical care, and there is no evidence that this case has been neglected during her stay in K.H.M.H. judging by the

daily well documented progress notes, order of medication, consultation requested and answered on time, the follow-up of the attending physician and surgical consultant, the summary discharge explained in detail, the course of the patient in hospital, including daily contact of Dr. Curreri with the patient attending surgeon in Puerto Rico regarding the patient's condition, even though the patient choose [sic] to go to another surgeon, but unfortunately a very unhappy post surgical complication occurred, but a very good end result.

2. Let me emphasize that there are some potential hazards in this kind of surgical procedure due to well recognized complications, the most commonly encountered risks are infection and bleeding; more serious risks are possibility of near-by organs injury such as bladder, urether, and bowel.

3. The treatment of small or large bowel vaginal fistula is surgical with some variations in the repair depending on the size of what segment of the bowel is involved, condition and lengths of time in which fistula has been developed, so it is important to establish a radiologic diagnosis if possible. The management priority when the patient is debilitated with malnutrition states, the patient should be first medical to correct these abnormalities, otherwise it will be a poor surgical risk.

4. Some entero recto-vaginal fistula may follow pelvic abscess, particularly if the bowel adheres to the vaginal cuff and forms part of the inflamatory process of the wall of the abscess.

The quoted part of Dr. Ruiz's report to the committee makes no mention of the diagnosis or need for the abdominal hysterectomy or of the manner in which the surgery was performed.

Under the Health Care Providers Malpractice Act, the conclusion of the Committee's expert is not binding on the plaintiff. The Berrys therefore filed in the District Court of the Virgin Islands a complaint identical to the proposed complaint filed with the Committee. Dr. Curreri answered, and the case was eventually listed for trial. At the outset of trial, Dr. Curreri made a motion *in limine* to preclude the Berrys from introducing evidence that the hysterectomy was unnecessary or performed improperly. In making that motion Dr. Curreri relied on 27 V.I.C. § 166i(b), which in relevant part provides:

> No action against a health care provider may be commenced in court before the claimant's proposed complaint has been filed with the Committee and the Committee has received the expert opinion as required by this section....

The district court denied the motion *in limine,* and evidence eventually was admitted on the diagnosis of need for a hysterectomy and on the manner of performance of the surgery. In ruling on the motion *in limine* the district court did not read the proposed complaint as alleging improper diagnosis. Instead, the court concluded that the expert, Dr. Ruiz, must have so read it, since he addressed the propriety of the diagnosis in his report. Although the court's ruling from the bench was not specific, apparently the court's reference was to the recital of Mary Berry's course of treatment:

> After reviewing the entire document submitted to me: This 32 year P4 was admitted in K.H.M.H. on September 1, 1980 for elective surgery because of fibroid uterus and adenomyosis, associated symptoms of dysmenorrhea, dyspareunia and low backache. Patient underwent TAH and prophylactic appendectomy on September 2, 1980. The surgical and pathologic report confirmed the admitting diagnosis.

The Berrys contend that this recital is an expression of an expert opinion that the diagnosis and surgery were proper, and that the district court was therefore justified in concluding that these claims had been submitted to the Committee.

We disagree. Section 166i(b) provides, conjunctively, that a complaint must be filed with the Committee and that the Committee must obtain an expert opinion. The purpose of the Committee "[is] to arrange for expert review of all malpractice claims before actions based upon such claims are

commenced in court." 27 V.I.C. § 166i(a). It is plain, therefore, that the complaint must set forth a specific claim or claims of malpractice, and that an expert opinion must be obtained on each claim. Here the complaint did not allege malpractice in diagnosing the need for a hysterectomy, or in the performance of that surgery. Thus there was no occasion for Dr. Ruiz to address such a claim. Moreover, the language in which he described the diagnosis and surgery clearly is no more than that, describing, accurately, the contents of medical records, without endorsing their contents.

As noted above, evidence was submitted respecting Dr. Curreri's diagnosis and treatment. Moreover, the court explicitly submitted to the jury claims of misdiagnosis and of negligent surgery. If, therefore, section 166i(b) limits the subject matter jurisdiction of the district court to consider medical malpractice claims, a new trial must be awarded. The Berrys do not dispute that the statute means what it says, and the cases construing it have treated the Committee filing requirement as jurisdictional. *Saludes v. Ramos,* 19 V.I. 544, 547 (D.V.I.1983), *vacated and remanded on other grounds,* 744 F.2d 992 (3d Cir. 1984); *Quinones v. Charles Harwood Memorial Hospital,* 573 F.Supp. 1101, 1103 (D.V.I.1983). A strict reading of the language "[n]o action against a health care provider may be commenced in a court before the claimant's proposed complaint has been filed with the Committee" is, moreover, entirely consistent with the overall legislative intention animating the Malpractice Act. A principal feature of that act is that the Government of the Virgin Islands procures a group insurance policy for all Virgin Islands health care providers, the premiums of which are paid, in part, by public funds. 27 V.I.C. § 166e. The act limits the amount of an attorney's contingent fee. 27 V.I.C. § 166f. It also limits the amount of recovery. 27 V.I.C. § 166b. The Committee review process is designed to eliminate claims lacking merit and encourage prompt settlement of meritorious claims. In this context, reading section 166i(b) as anything less than a limitation on the subject matter jurisdiction of the district court would be inconsistent with the overall statutory objectives.

## II.

Dr. Curreri challenges the district court's rulings in several other respects, all of which bear upon the amount of the judgment. The jury verdict awarded Mary Berry $300,000 and Normil Berry $25,000. A judgment was entered "[t]hat plaintiffs Mary Berry and Normil Berry recover from defendant Peter Curreri the sum of $300,000 and $25,000, respectively, together with costs, including reasonable attorneys fees." Dr. Curreri's challenges are predicated on 27 V.I.C. § 166b which in relevant part provides:

> The total amount recoverable for any injury of a patient may not exceed two hundred and fifty thousand dollars ($250,000) plus actual expenses up to the time of trial not paid or payable or reimbursed from any other source for reasonable and necessary medical care, custodial care and/or rehabilitation services for each anticipated year of need; and lost earnings.

Dr. Curreri contends: (1) that the $300,000 judgment in favor of Mrs. Berry exceeds the statutory maximum; (2) that in applying the statutory maximum the amount awarded to Mr. Berry for loss of consortium must be included; and (3) the statutory maximum includes any award of attorneys fees. In support of the third contention Dr. Curreri points to the fact that the Health Care Providers Malpractice Act deals specifically with attorneys fees, by imposing limits on the percentage of the recovery an attorney may charge as a contingency fee. 27 V.I.C. § 166f.

The Berrys respond: (1) that the $300,000 award to Mrs. Berry is based on a general verdict which may include a permissible award, above $250,000 for lost wages; (2) that 27 V.I.C. § 166b does not modify 5 V.I.C. § 541(b) which vests discretion in the district court to award fees to the prevailing party; and (3) that the $250,000 limitation of recovery in 27 V.I.C. § 166b is in any event unconstitutional.

Since we have held in Part I that a new trial is required, Dr. Curreri's challenges to the amount of the judgment are, for purposes of the instant appeal, moot. Moreover, although the judgment provides for a fee award to the prevailing party, the amount of such an award has not been quantified. Nevertheless, because we are remanding for a new trial, and some of the issues raised by Dr. Curreri may arise in the course of that trial, it is appropriate to give guidance on them.

■ The Berrys are certainly correct that lost earnings may be recovered in addition to any damages to which the $250,000 limit in section 166b applies. Since, however, the $250,000 limit is an essential feature of the legislative scheme for stabilizing the cost of malpractice insurance, care must be taken to be sure that a general verdict does not include an amount of damage prohibited by that section. Thus in any medical malpractice case in which the plaintiff seeks to recover lost earnings and other damages, the court should not submit the case to the jury in a manner which results in a general verdict. Special verdict interrogatories should separate the claim for lost earnings from the claim for other damages.

As to Mr. Berry's claim for loss of consortium, the plain language of section 166b suggests that it is included in the $250,000 limit on recovery. Mr. Berry's claim is wholly derivative. It stands or falls on the malpractice claim of Mrs. Berry. The Berrys have not called to our attention any authority or legislative history suggesting otherwise.

■ The attorneys fee question has been addressed by this court in a closely analogous context. In *Baptiste v. Government of the Virgin Islands*, 529 F.2d 100, 102–03 (3d Cir.1976), the court pronounced dicta to the effect that the $25,000 limit in the Virgin Islands Tort Claims Act, 33 V.I.C. § 3911(c), applied to a judgment for costs, including attorneys fees awarded to the prevailing party. The Berrys point out that the language in section 166b differs from that in the Tort Claims Act, and thus that the legislature may have intended a different result. On the other hand, a construction of the statute which permitted the shifting of fees to a losing health care provider in excess of the maximum recovery specified in section 166b would appear to be inconsistent with the legislature's overall objective of stabilizing the cost of malpractice insurance; a cost which is borne in significant amount by the Government of the Virgin Islands.

The entire cost of the Tort Claims Act is borne by that Government, which made a legislative decision to limit its exposure in any judgment to $25,000. The Government's interest in the Health Providers Malpractice Act is not identical, but it is sufficiently similar that the *Baptiste* interpretation should apply to it as well as the Tort Claims Act. That interpretation of section 166b is suggested, as well, by the inclusion in the Health Care Providers Malpractice Act of limitations on contingent fees as percentages "of the plaintiffs' recovery." 27 V.I.C. § 166f.

The Berrys' constitutional objection to section 166b is that by placing a maximum on the amount of damages which a jury may award in a personal injury action the Virgin Islands Legislature violated the civil jury trial provision of the Seventh Amendment. In support of the Seventh Amendment argument, the Berrys point to *Boyd v. Bulala*, 647 F.Supp. 781, 788–89 (D.W. Va.1986), which holds that a Virginia statute imposing a damage limitation on jury verdicts in medical malpractice cases in a trial in a federal court violates the Seventh Amendment. The *Boyd* court relied on *Byrd v. Blue Ridge Rural Electric Corp.*, 356 U.S. 525, 537, 78 S.Ct. 893, 900, 901, 2 L.Ed.2d 953 (1958), and *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935), both of which refer to the factfinding role of juries in federal courts. This contention was never made to, and thus not addressed by, the district court. It is advanced here as a ground for affirming the judgment despite its inconsistency with section 166b. Since we are setting aside the judgment on other grounds there is no reason for addressing a legal contention which was not made in the trial court

and which cannot affect the outcome of the appeal. Our decision not to consider the Seventh Amendment contention should not be construed as any endorsement, even tacitly, of the view of the *Boyd* court on that issue.

### III.

Dr. Curreri has also objected to the district court's instruction in several respects. Since we have granted a new trial which will be limited to the malpractice claims presented to the Committee, the instructions on retrial will be different. There is no reason, therefore, to address these objections on this appeal.

### IV.

The submission to the jury of claims of malpractice never presented to the Committee violated 27 V.I.C. § 166i(b), and this error requires a new trial. The judgment appealed from will therefore be reversed and the case remanded to the trial court for proceedings consistent with this opinion.