**GWENDOLYN HALL BRADY, Appellant/Plaintiff**

**v.**

**RAYMOND CINTRON, M.D. and SAYRE CINTRON, M.D.,**
**Appellees/Defendants**

S. Ct. Civ. no. 2010-0014

Supreme Court of the Virgin Islands

September 27, 2011

803

804

806

PAMELA LYNN COLON, ESQ., Law Offices of Pamela Lynn Colon, St. Croix, USVI, *Attorney for Appellant.*

JAMES L. HYMES, III, ESQ., Law Offices of James L. Hymes, III, P.C., St. Thomas, USVI, *Attorney for Appellee Raymond Cintron.*

EDWARD L. BARRY, ESQ., The McChain Nissman Law Group, LLC, St. Thomas, USVI, *Attorney for Appellee Sayra Flores.*

RHYS S. HODGE, *Chief Justice*; IVE ARLINGTON SWAN, *Associate Justice*; and VERNE A. HODGE, *Designated Justice.*[1]

---

[1] Associate Justice Maria M. Cabret has been recused from this matter. The Honorable Verne A. Hodge sits in her place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

## OPINION OF THE COURT

(September 27, 2011)

HODGE, *Chief Justice*. Dr. Raymond Cintron performed a colonoscopy on Gwendolyn Brady on June 19, 2004. It was later determined that during that procedure Brady sustained a perforation to her colon requiring emergency surgery. Although Brady may have suffered very real injuries as a result of these events, her failure to comply with the jurisdictional requirements of the Medical Malpractice Act mandates that we affirm the Superior Court Order granting the motions to dismiss of Dr. Cintron and Sayra Flores.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2004, Dr. Cintron, with the assistance of Flores, performed a colonoscopy on Brady. Following the procedure, Brady informed both Dr. Cintron and Flores that she was experiencing bloating which was causing her pain. Brady claims that Dr. Cintron advised her that the procedure was a success and that her discomfort was a result of excess air in her abdomen that would disappear over time. Over the next three days Brady continued to experience bloating sensations as well as an acute pain in her abdomen. On June 21, 2004, Brady alleges that she called Dr. Cintron's office to inform him of her continued abdominal pain and spoke with Flores. According to Brady, Flores informed her that her colonoscopy had gone well and that the abdominal pains were the result of gas. Brady, however, insisted that her abdominal pains were abnormal and demanded to speak with Dr. Cintron. On June 22, 2004, Dr. Cintron contacted Brady and assured her that her abdominal pains were normal and diagnosed her condition as gas. The very next day Brady sought a second opinion, and it was determined that Brady required emergency surgery to cure a perforation of her colon.

On May 1, 2006, Brady filed a proposed complaint with the Commissioner of the Department of Health alleging medical malpractice, and four days later, on May 5, 2006, Brady filed her complaint with the Superior Court. In counts I, III, and V of the complaint, Brady asserts claims against both Dr. Cintron and Flores for negligence, gross

---

[2] While she is Dr. Cintron's wife, Sayra Flores is the legal name of Sayre Cintron, as listed in the caption.

negligence, and negligent infliction of emotional distress. Counts II, IV, and VI allege negligence, gross negligence, and intentional infliction of emotional distress against Flores for her alleged practice of medicine without a license.[3] Count VII alleges unfair trade practices against Dr. Cintron and Flores under 12A V.I.C. § 101, and count VIII demands punitive damages. Flores and Dr. Cintron filed answers to the complaint asserting several affirmative defenses, including: 1) the Superior Court lacks subject matter jurisdiction; 2) Brady's claims are barred by the statute of limitations because she failed to comply with the requirements of 27 V.I.C. § 166; and 3) Brady has failed to state a claim upon which relief can be granted.

On September 4, 2008, Dr. Cintron filed a motion to dismiss claiming that Brady's failure to comply with the mandatory jurisdictional requirements of 27 V.I.C. § 166i deprived the Superior Court of subject matter jurisdiction. Subsequently, on March 2, 2009, in an attempt to comply with the requirements of section 166i, Brady filed a motion for leave to supplement her complaint. Flores, on April 8, 2009, also filed a motion to dismiss for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. In a February 4, 2010 Memorandum Opinion and Order, the Superior Court granted Dr. Cintron and Flores's motions to dismiss. First, the Superior Court held that Brady's failure to comply with the pre-filing provisions of title 27, section 166i prevented the Superior Court from obtaining subject matter jurisdiction with respect to Brady's claims against Dr. Cintron, as stated in counts I, III, V, and VIII.[4] Further, because Brady did not file her proposed complaint with the Medical Malpractice Action Review Committee until May 1, 2006 — less than ninety days before the statute of limitations expired on her claims — the court denied the motion to supplement her complaint, concluding that any attempt to supplement her complaint would be futile.

Second, the Superior Court held that a medical assistant, working within the scope of her employment, is covered by the Medical Malpractice Act. The Superior Court also determined that on June 19, 2004, Flores was acting within the scope of her employment in assisting

---

[3] Flores is a physician, but she is not licensed to practice in the Virgin Islands.

[4] In reaching this conclusion, the Superior Court determined that Dr. Cintron, a licensed physician in the Virgin Islands, qualified as a health care provider under 27 V.I.C. § 166(c).

Dr. Cintron as he performed Brady's colonoscopy. The Superior Court thus held that under 27 V.I.C. § 166i, it lacked subject matter jurisdiction to hear any claims against Flores related to her involvement with the medical procedure on June 19, 2004.[5] The Superior Court declined to make a determination as to whether Flores's alleged diagnosis of Brady's post surgery symptoms on June 21, 2004, was beyond the scope of Flores's employment and not covered by the Medical Malpractice Act.[6] Instead, the Superior Court held that Brady had failed to allege any facts supporting an inference of proximate causation between Flores's alleged diagnosis on June 21, 2004, and Brady's injuries.[7] Thus, the Superior Court held that "[Brady]'s claims against Flores in [c]ounts I, II, III, IV, V, VI, and VIII are dismissed pursuant to Rule 12(b)(6)."[8]

Finally, the Superior Court held that Brady's claim against Dr. Cintron and Flores for deceptive and unconscionable trade practice, under 12A V.I.C. § 101, fell under the Medical Malpractice Act.[9] The Superior Court accordingly dismissed Brady's deceptive trade practices claim against Dr. Cintron and Flores for lack of subject matter jurisdiction. But to the extent the claim involved Flores's alleged diagnosis on June 21, 2004, the Superior Court dismissed for failure to state a claim. Brady filed her timely notice of appeal on February 12, 2010.[10]

---

[5] Counts I, III, and V of Brady's complaint.

[6] Brady alleges that on June 21, 2004, she called Dr. Cintron's office and upon describing her post surgery symptoms to Flores, Flores diagnosed Brady's condition as gas in her abdomen.

[7] Brady's complaint alleges only two instances involving Flores that relate to her medical malpractice claims — the colonoscopy and related procedures on June 19, 2004, and the June 21, 2004 telephone call.

[8] The wording of the Superior Court's Memorandum Opinion and Order does not clearly delineate which counts were dismissed under which rule. In reading the Memorandum Opinion and Order in its entirety, however, it is clear that the Superior Court dismissed all of Brady's claims against Flores relating to June 19, 2004 (counts I, III, and V), for lack of subject matter jurisdiction, and dismissed all of Brady's claims against Flores relating to June 21, 2004 (counts II, IV, and VI), for failure to state a claim upon which relief can be granted.

[9] Brady alleges that Dr. Cintron and Flores committed a joint deception by permitting Flores to practice medicine without a license for which Brady seeks a remedy under Section 101.

[10] *See* V.I.S.Ct.R. 5(a)(1).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The Superior Court had jurisdiction pursuant to 4 V.I.C. § 76(a), and this Court has jurisdiction over Brady's appeal pursuant to 4 V.I.C. § 32(a).

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Likewise, this Court's review of the trial court's construction of a statute is plenary. *V.I. Pub. Serv. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 482 (V.I. 2008), *cert. denied*, No. 08-3398, slip op. at 1 (3d Cir. Jan. 19, 2009).

### B. Brady's Supplemental Complaint

Brady first contends that the Superior Court erred in holding that her supplemental complaint could not cure her failure to comply with the pre-filing requirements of 27 V.I.C. § 166i. Specifically, Brady argues that her failure to wait ninety days from the time she filed her proposed complaint with the Medical Malpractice Action Review Committee to the time she filed her complaint with the Superior Court did not constitute a fatal jurisdictional flaw, but rather a technical deficiency capable of cure through a supplemental complaint.[11] Brady thus contends that the Superior Court should have freely given her leave to supplement her complaint based on the Federal Rules of Civil Procedure's emphasis on merit-based decisions.

### 1. *The Pre-Filing Requirements of the Medical Malpractice Act are Jurisdictional*

 The Virgin Islands Medical Malpractice Act (MMA), which was enacted in 1975, changed the requirements for prosecuting medical

---

[11] Brady characterizes her motion as one "for leave to amend and supplement her complaint." Brady, however, is attempting to cure her failure to wait ninety days before filing her complaint in the Superior Court through a supplemental complaint setting out that ninety days has now passed. Accordingly, she is actually attempting to supplement, and not amend, her complaint. *See* FED. R. CIV. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a *supplemental pleading* setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented.") (emphasis added); *Mathews v. Diaz*, 426 U.S. 67, 75 n.9, 96 S. Ct. 1883, 1889, 48 L. Ed. 2d 478 (1976).

malpractice actions in this jurisdiction. It established a Medical Malpractice Action Review Committee (the Committee) to "arrange for expert review of all malpractice claims before actions based upon such claims are commenced in court." 27 V.I.C. § 166i(a). The purpose of the MMA and the Committee review process is "to eliminate claims lacking merit and encourage prompt settlement of meritorious claims." *Berry v. Curreri*, 837 F.2d 623, 626 (3d Cir. 1988). It specifically seeks to prevent actions from being filed in courts until after the statutory requirements of the MMA are fulfilled. The MMA provides that:

> No action against a health care provider may be commenced in court before the claimant's proposed complaint has been filed with the Committee and the Committee has received the expert opinion as required by this section, provided, that if said opinion is not received by the Committee within ninety days from the date the complaint was filed with the Committee, the claimant may commence his action against the health care provider in court; Provided further, That the commencement of the court action shall not prevent the Committee from obtaining the expert opinion.

27 V.I.C. §`166i(b). The MMA also imposes a two year statute of limitations from the date of the alleged act, omission or neglect within which claimants must file their claims with any court. *See* 27 V.I.C. § 166d(a) ("No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or which should have been rendered unless filed within two (2) years from the date of the alleged act, omission or neglect.").[12]

---

[12] On its face, the statute of limitations, under 27 V.I.C. § 166d(a), is unclear as to whether the claim must be filed with the Committee or the court within two (2) years. *See* 27 V.I.C. § 166 *et seq.* (using the words "file" and "claim" to refer to process involving the Committee, and using the words "commencement" and "action" to refer to process involving the court). Prior to 1993, however, the MMA contained a tolling provision which stated that "[t]he filing of the proposed complaint with the Committee shall toll the applicable statute of limitations for a period of ninety days." 27 V.I.C. § 166i(c) (deleted 1993). In reading the statute of limitations section — which has remained unchanged since its adoption in 1975 — in conjunction with the former tolling provision of 27 V.I.C. § 166i(c), it is clear that the Virgin Islands Legislature intended that the statute of limitations section under 27 V.I.C. § 166d(a) require that all claims against a health care provider based upon professional services or health care rendered or which should have been rendered be filed with the court within two (2) years from the date of the alleged act, omission or neglect. *See Rosenberg v. XM Ventures*,

■ Section 166i of the MMA thus sets out specific requirements that must be complied with in order to properly file a claim in the Superior Court against a health care provider.[13] First, a complainant must file a proposed complaint with the Committee by mailing a copy by registered or certified mail to the Commissioner of Health. 27 V.I.C. § 166i(c). Upon receipt of the complaint, the Commissioner "shall immediately forward a copy to each health care provider named as a defendant . . . and said health care provider may file a proposed answer to the complaint to the committee within twenty (20) days." *Id.* The Committee then determines the type of medical expert needed to review the claim and arranges for the expert to review the medical records and legal papers submitted to the Committee. *See* 27 V.I.C. § 166i(d)(1). The expert then submits a written opinion concerning whether or not the defendant acted or failed to act within the appropriate standards of medical care. *See id.* It is only after this process is completed, or ninety days has elapsed since the claimant's

---

274 F.3d 137, 141 (3d Cir. 2001) (holding that in interpreting a statute, the primary role of courts is to give effect to the legislature's intent); *see also Miller v. LaSalle Bank Nat. Ass'n*, 595 F.3d 782, 785-86 (7th Cir. 2010) (determining legislative intent of statute by looking at statute's wording prior to being amended). This interpretation of 27 V.I.C. § 166d(a) is consistent with how other courts have interpreted the Virgin Islands Medical Malpractice Act, as well as Indiana's Medical Malpractice Act, which contains a statute of limitations section with almost identical language. *See Saludes v. Ramos*, 744 F.2d 992, 996 (3d Cir. 1984) ("[T]he Medical Malpractice Act imposes no explicit deadline on the filing of the proposed complaint with the Malpractice Committee. The only time limit is the statute of limitations, which operates only because the proposed complaint must be filed with the Committee before any action may be filed in court, 27 V.I.C. § 166i(b)."); *Richardson v. Knud Hansen Mem'l Hosp.*, 744 F.2d 1007, 1013 (3d Cir. 1984) ("The Medical Malpractice Act [] establishes a two-year limitations period."); *Samuel v. Gov't of V.I.*, 48 V.I. 620, 627 (D.V.I. 2006) ("The MMA requires that a medical malpractice claim be commenced 'within two (2) years from the date of the alleged act, omission or neglect' . . . ."); *Quinones v. Charles Harwood Mem'l Hosp.*, 573 F. Supp. 1101, 1102-03, 20 V.I. 356 (D.V.I. 1983) (interpreting 27 V.I.C. § 166d(a) to require individuals to file claims with the court within two years); *Missar v. Bucher*, 46 V.I. 15, 21 (V.I. Super. Ct. 2004) ("[T]he Legislature intended for medical malpractice plaintiffs to file their claims within a two year period after the date the claim accrued, including a mandatory 90 day period during which the malpractice review committee must receive notice and have the opportunity to obtain expert review of the claim."); *see also Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1243 n.2 (Ind. 2010) (holding statute of limitations under the Medical Malpractice Act, Ind. Code § 34-18-7-1, requires individuals to file their claims in the court within two years); *Williams v. Adelsperger*, 918 N.E.2d 440, 445 (Ind. Ct. App. 2009) (same).

[13] It is not disputed that Dr. Cintron, a licensed physician in the Virgin Islands, qualifies as a health care provider under 27 V.I.C. § 166(c).

proposed complaint was filed with the Committee, that a complainant may commence an action in the Superior Court. *See* 27 V.I.C. § 166i(b).

■ As an initial matter we must determine whether the pre-filing requirements of section 166i are jurisdictional requirements or claims-processing rules. This distinction is important because of the contrasting effect that claims-processing rules and jurisdictional requirements have on a court's scope of authority. *See Reed Elsevier, Inc. v. Muchnick,* ___ U.S. ___, 130 S. Ct. 1237, 1244, 176 L. Ed. 2d 17 (2010). While claims-processing rules can be equitably tolled or even waived, courts have "no authority to create equitable exceptions to jurisdictional requirements and litigants cannot by waiver or forfeiture confer jurisdiction where it is otherwise lacking." *Menominee Indian Tribe of Wisconsin v. United States,* 614 F.3d 519, 524, 392 U.S. App. D.C. 202 (D.C. Cir. 2010) (internal citations and quotation marks omitted). *See Pichardo v. Comm'r of Labor,* 49 V.I. 447, 450 (V.I. 2008). Determining whether a statutory prerequisite to filing suit is jurisdictional is "discerned by looking to the condition's text, context, and relevant historical treatment." *Muchnick,* 130 S.Ct. at 1246. If the legislature has clearly defined a threshold limitation on a statute's scope as jurisdictional, then our inquiry is over. *See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 510, 126 S. Ct. 1235, 1242, 163 L. Ed. 2d 1097 (2006). If, however, "the limitation 'lacks a clear jurisdictional label' we then ask whether the structure of the statute or long-standing judicial precedent 'compel[s] the conclusion that . . . it nonetheless impose[s] a jurisdictional limit.' " *Menominee Indian Tribe,* 614 F.3d at 524 (quoting *Muchnick,* 130 S. Ct. at 1244).

■ Although title 27, section 166i does not specifically state that its pre-filing requirements are jurisdictional, its structure and history necessitate this Court to conclude that section 166i imposes jurisdictional limitations. *See Muchnick,* 130 S.Ct. at 1244. The plain language of the statute indicates that the Legislature intended for the pre-filing requirements to be jurisdictional. According to section 166i(b), "[n]o action against a health care provider may be commenced in court before [the requirements of section 166i are met]." Superior Court Rule 22 defines the commencement of a civil action as "filing a complaint with the court." SUPER. CT. R. 22. Courts interpreting Indiana's Medical Malpractice Act, which contains almost identical language as section

166i(b),[14] have also held that an action is commenced "by filing an action with the court." *See Shelton v. Wick*, 715 N.E.2d 890, 894 (Ind. Ct. App. 1999). Moreover, section 166i's requirement that a *"proposed* complaint" be filed with the Committee before any action against a health care provider may be commenced in court further indicates that the Legislature intended that the pre-filing requirements of section 166i be jurisdictional. By characterizing the document to be filed with the Committee as a proposed complaint, the Legislature indicated its intent that it did not want the adjudication of medical malpractice claims to commence in the courts until after claimants had met the requirements of section 166i.

█ This conclusion is further supported by the historical purpose of the statute. The MMA was enacted by the Virgin Islands Legislature "to provide continuing medical care in the face of rising malpractice insurance costs and the unavailability of professional liability insurance resulting in the limitation and fear of cessation of medical practice in the islands." *Davis v. Omitowoju*, 883 F.2d 1155, 1159 n.5 (3d Cir. 1989) ("[T]he public interest . . . requires that insurance premium levels, for health care professionals must be retained in order to maintain high quality medical services for the Virgin Islands." (citing 1986 V.I. Sess. Laws 170)). And limiting courts' jurisdiction over medical malpractice claims prior to the Committee's receipt of the expert opinion furthers this purpose. *See Berry*, 837 F.2d at 626 ("[R]eading [27 V.I.C. § 166i] as anything less than a limitation on the subject matter jurisdiction of the [] court would be inconsistent with the overall statutory objectives."); *see also Detterline v. Bonaventura*, 465 N.E.2d 215, 216 (Ind. Ct. App. 1984) ("[T]he dominant aim of [the MMA] as a whole is to preserve health care services for the community."). Moreover, the historical purpose of section 166i's pre-filing requirements is supported by long-standing judicial precedent. *See Abdallah v. Callender*, 1 F.3d 141, 144, 28 V.I. 416 (3d Cir. 1993) (holding that the MMA's pre-filing requirements are jurisdictionally mandatory); *Berry*, 837 F.2d at 626 (same); *Simmonds v. Gov't of V.I.*, No. Civ. A. 2003/0137A, 2009 U.S. Dist. LEXIS 35130, at *29 (D.V.I. April 22, 2009) (same); *Ference v. V.I. Family Sports &*

---

[14] *See* IND. CODE § 34-18-8-4 ("[A]n action against a health care provider may not be commenced in a court in Indiana before . . . ."). The Medical Malpractice Act adopted in this jurisdiction is modeled after Indiana's Medical Malpractice Act. *Compare* 27 V.I.C. § 166 *et seq.*, *with* IND. CODE § 34-18-1-1 *et seq.*

*Fitness Ctr.*, 45 V.I. 345, 350 (V.I. Super. Ct. 2004) (same); *see also Johnson v. St. Vincent Hosp., Inc.*, 273 Ind. 374, 404 N.E.2d 585, 590 (1980) (same); *H.D. v. BHC Meadows Hosp., Inc.*, 884 N.E.2d 849, 853 (Ind. Ct. App. 2008) (same); *Detterline*, 465 N.E.2d at 216 (same). Thus, the plain language and historical purpose of the statute clearly indicate that the Legislature intended the pre-filing requirements of 27 V.I.C. § 166i to limit the authority of courts in this territory in adjudicating medical malpractice actions. *See Henderson v. Shinseki*, ___ U.S. ___, 131 S. Ct. 1197, 1202-03, 179 L. Ed. 2d. 159 (2011).

▌ Turning next to the facts of this case, we find the Superior Court lacked jurisdiction to hear Brady's claims until after the statute of limitations had expired. The alleged acts upon which Brady's complaint is based are claimed to have occurred on June 19, 2004 and June 21, 2004. Brady did not file her proposed complaint with the Committee until May 1, 2006. As a result, under section 166i, the Superior Court lacked subject matter jurisdiction to hear Brady's medical malpractice claims until either the Committee had received the expert opinion or ninety days had expired — July 30, 2006. Despite the explicit requirements of section 166i, Brady filed her complaint with the Committee on May 1, 2006, and in the Superior Court on May 5, 2006. On June 19, 2006 and June 21, 2006, respectively — prior to the expiration of ninety days or the Committee receiving an expert opinion — the two year statute of limitations expired on Brady's medical malpractice claims. *See* 27 V.I.C. § 166d(a). Further, there is no statutory tolling provision under section 166d(a) applicable to the facts of this case. The Superior Court, therefore, lacked subject matter jurisdiction over Brady's medical malpractice claims until July 30, 2006 — over a month after the statute of limitations had elapsed — and it did not err in dismissing Brady's claims against Dr. Cintron.[15]

---

[15] We note that the Superior Court, in its February 4, 2010 Memorandum Opinion and Order, characterized the dismissal of Brady's complaint against Dr. Cintron as a dismissal for lack of subject matter jurisdiction. It is well-established, however, that Virgin Islands statutes of limitation are presumptively non-jurisdictional, and therefore may be waived if not timely asserted by a defendant or equitably modified by a court. *See Jensen v. V.I. Water & Power Auth.*, 52 V.I. 435, 442 (V.I. 2009); FED. R. CIV. P. 8(c) (identifying the statute of limitations as an affirmative defense). Thus, although the lapse of the statute of limitations in this case can be attributed to the Superior Court's failure to obtain subject matter jurisdiction over Brady's complaint until July 30, 2006, the Superior Court should have entered its dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) rather than Rule 12(b)(1). *See Marti-*

817

## 2. *The Jurisdictional Defects in Brady's Complaint could not be Cured by a Supplemental Pleading*

Brady contends that because of the Federal Rules of Civil Procedure's emphasis on merit-based decisions, she should have freely been given leave to supplement her complaint in order to cure its jurisdictional defects.[16] In support of her argument, Brady relies on the United States Supreme Court's holding in *Mathews v. Diaz*,[17] as well as a line of cases that stand for the proposition that supplemental pleadings should be freely granted to correct technical defects in pleadings and allow for a decision on the merits. The facts of *Diaz*, however, are distinguishable, and Brady's failure to comply with the requirements of section 166i is not a technical deficiency, curable through a supplemental pleading.

In *Diaz*, several plaintiffs challenged the constitutionality of a requirement that only permanent resident aliens who had resided in the United States for at least five years could receive certain Medicare benefits. *Mathews v. Diaz*, 426 U.S. 67, 71, 96 S. Ct. 1883, 1887, 48 L. Ed. 2d 478 (1976). One of the plaintiffs had joined the civil action before he had actually filed an application for Medicare benefits with the Secretary of the Department of Health, Education, and Welfare. *See id.* at 75, 96 S. Ct. at 1889. Subsequently, while the case was pending in the district court, the plaintiff satisfied this condition and moved to supplement his complaint. *Id.* Although the United States Supreme Court characterized the filing requirement as a "nonwaivable condition of jurisdiction," the Court nevertheless determined that the plaintiff's filing of the application after the pendency of the lawsuit did not divest the district court of jurisdiction. *Id.* at 75, 96 S. Ct. at 1889. The Court held that the Secretary's stipulation that the plaintiff's application would be

---

*nez v. Colombian Emeralds*, 51 V.I. 174, 189 (V.I. 2009) (explaining that affirmative defenses arise under Rule 12(b)(6), not Rule 12(b)(1) and thus may not be raised by Superior Court *sua sponte* when time for filing motion to dismiss has lapsed). However, because Dr. Cintron timely asserted his statute of limitations defense in both his answer and a motion to dismiss, the Superior Court's error in treating Dr. Cintron's motion as a Rule 12(b)(1) motion rather than a Rule 12(b)(6) motion is harmless.

[16] Federal Rule of Civil Procedure 15(d) is made applicable to the Superior Court by Superior Court Rule 7. *See* SUPER. CT. R. 7 ("The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Civil Procedure . . . ."); *see also* note 11 *supra*.

[17] 426 U.S. 67, 96 S. Ct. 1883, 48 L. Ed. 2d 478 (1976).

denied was tantamount to a denial of the application and constituted a waiver of the exhaustion requirements of 42 U.S.C. § 405(g). *Id.* at 76, 96 S. Ct. at 1889. The Court thus interpreted the pleadings as having been impliedly supplemented and permitted the case to continue to a merit-based decision because filing a supplemental complaint was not "too late." *Id.* at 76, 96 S. Ct. at 1889.

The Court's holding in *Diaz* was premised on the fact that there was no prejudice to the parties in dealing with the merits because the administrative agency had not yet actually rejected the complainant's claim, which would have caused the statute of limitations to begin running. *See id.* at 74-78, 96 S. Ct. 1888-90; *see also* 42 U.S.C. § 405(g) (requiring applicant for Social Security benefits commence civil action within sixty days after the mailing of the decision which is being appealed). Thus, if the Supreme Court had dismissed the appeal, the complainant would have merely re-filed his claim in the district court, the exact same ruling would come out of the district court, and the same merit-based decision would end up right back in front of the Supreme Court. *See Diaz*, 426 U.S. at 75 n.9, 96 S. Ct. at 1889 n.9. The Supreme Court, therefore, was avoiding needless extra litigation to get back to the same issue after a dismissal without prejudice. *See id.* at 74-78, 96 S. Ct. 1888-90. In contrast, Brady did not satisfy the nonwaivable jurisdictional requirements of 27 V.I.C. § 166i until after the two year statute of limitations had expired. A dismissal in this case would thus terminate the litigation with prejudice because the expiration of the statute of limitations would prevent Brady from re-filing her claims. Accordingly, the Supreme Court's holding in *Diaz* is not applicable to this case.

Brady also relies on several other cases for the proposition that supplemental pleadings should be freely given to correct technical defects in pleadings and allow for a decision on the merits. Based on this proposition, Brady contends that the Superior Court erred in not granting her motion for leave to supplement her complaint. Brady's arguments, however, are premised on the mischaracterization that her failure to comply with the requirements of section 166i, prior to the expiration of the two year statute of limitations, is a "technical deficiency" which is easily curable through a supplemental pleading under Federal Rule of

Civil Procedure 15(d).[18] By contrast, the requirements of section 166i are non-waivable jurisdictional conditions that must be satisfied in order to vest the Superior Court with subject matter jurisdiction to hear an individual's medical malpractice claims. *See Abdallah*, 1 F.3d at 144; *Berry*, 837 F.2d at 626. Thus, Brady's failure to comply with these jurisdictional conditions prior to the expiration of the statute of limitations created more than merely a technical deficiency in her complaint that could be cured through a supplemental pleading. Instead, it created a bar to her medical malpractice action. The Superior Court was therefore correct in denying Brady's motion for leave to supplement her complaint as futile, and its order dismissing her claims against Dr. Cintron, as stated in counts I, III, V, and VIII, is affirmed.

### C. Brady's Negligence Claims

Next, Brady argues that the Superior Court erred in dismissing her claims against Flores. Brady contends that Flores is not a "health care provider" under the MMA, and that the Superior Court erred in holding that a medical assistant, working within the scope of her employment, is covered by the MMA. Brady also argues that her complaint was sufficiently pled to allow a decision on the merits, and the Superior Court erred in dismissing her claims relating to Flores's alleged diagnosis of Brady on June 21, 2004, under Federal Rule of Civil Procedure 12(b)(6).[19] While the trial court did err in finding Flores to be a health care provider, its ultimate decision dismissing Brady's medical malpractice claims against Flores was correct because Brady failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).

#### 1. *Medical Assistants are Not Covered by the Medical Malpractice Act*

The MMA applies to all "health care providers," as defined by 27 V.I.C. § 166(c). *See* 27 V.I.C. § 166i(b). In determining whether Flores,

---

[18] Brady has failed to cite a single case in which the complainant failed to comply with the statutorily mandated jurisdictional requirements until after the applicable statute of limitations had lapsed, and was subsequently allowed to supplement his or her compliant. Instead, all the cases cited by Brady involve facts where the claimant has complied with the pre-suit jurisdictional requirements and the trial court has obtained subject matter jurisdiction over the claims prior to the running of the applicable statute of limitations.

[19] Federal Rule of Civil Procedure 12(b) is made applicable to the Superior Court by Superior Court Rule 7. *See* SUPER. CT. R. 7.

an unlicensed medical assistant, is a health care provider under the MMA, we must look to the Legislature's intent. *See In re Adoption of Sherman*, 49 V.I. 452, 456 (V.I. 2008). The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. *Id.* The inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent. *Id.* Under 27 V.I.C. § 166(c), a health care provider is defined to include:

> a person, corporation, facility or institution *who must be licensed by this territory* to provide health care or professional medical services including a medical, osteopathic, chiropractic or naturopathic physician, hospital, dentist, registered or licensed practical nurse to include the Advanced Practice Registered Nurse, optometrist, podiatrist, physical therapist, psychologist, paramedical personnel, emergency medical technician, pharmacist and laboratory technician.

(emphasis added). Thus, in order to qualify as a health care provider under the MMA, a person, corporation, facility, or institution must be licensed by the Virgin Islands to provide health care or professional medical services.

 The trial court held that Flores's acts on June 19, 2004, fell within the coverage of the MMA because Flores was acting within the scope of her employment as a medical assistant.[20] Flores, however, is not licensed by this territory to provide health care or professional medical services. The trial court therefore erred in concluding that Flores, an unlicensed medical assistant, is covered by the MMA.[21] Flores argues that interpreting the definition of health care provider to exclude unlicensed medical assistants would produce absurd results and contradict the clear intention of the Legislature. However, it is not the function of this Court to substitute its judgment for that of the Legislature. *See Murrell v. People*, 54 V.I. 338, 347 (V.I. 2010) (holding courts must adhere to

---

[20] In reaching this decision, the Superior Court relied on *Ference v. Virgin Islands Family Sports and Fitness Center, Inc.*, 45 V.I. 345 (V.I. Super. Ct. 2004). The holding in *Ference*, however, does not support this conclusion. In Ference, the Superior Court merely held that a fitness center, which was licensed by the territory to provide physical therapy, was a "health care provider" for purposes of the MMA. *Ference*, 45 V.I. at 352. Ference does not stand for the proposition that unlicensed employees of health care providers, working within the scope of their employment, are covered under the MMA.

[21] We express no opinion on whether licensed medical assistants are health care providers under section 166(c).

legislative intent when interpreting a statute); *Daughters of Miriam Ctr. for the Aged v. Mathews*, 590 F.2d 1250, 1257 (3d Cir. 1978) ("[C]ourts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S. Ct. 1028, 1031, 10 L. Ed. 2d 93 (1963))). Our role is to construe the statute the Legislature created, and section 166(c) clearly does not include unlicensed employees of health care providers within its definition of a health care provider.[22] Unlicensed medical assistants are therefore not covered under the MMA.[23]

### 2. Brady's Complaint was not Sufficiently Pled Under Rule 12(b)(6)

 Under Federal Rule of Civil Procedure 12(b)(6), a party may move to have a claim dismissed "for failure to state a claim upon which relief can be granted." The adequacy of a complaint is governed by the general rules of pleading set forth in Rule 8 of the Federal Rules of Civil Procedure.[24] In *Bell Atlantic Corp. v. Twombly*[25] and *Ashcroft v. Iqbal*,[26] the United States Supreme Court interpreted Rule 8 to require a complaint to set forth a plausible claim for relief, and articulated the proper standard for evaluating motions to dismiss for failure to state a claim: "a claim requires a complaint with enough factual matter (taken as true) to suggest the required element."[27] *Robles v. HOVENSA, LLC*, 49 V.I. 491, 501 (V.I. 2008) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.

---

[22] This conclusion is consistent with how other courts have interpreted similar provisions. For example, in *Weidig v. Crites*, the Maryland Court of Appeals held that a medical office employee of a licensed physician was not a health care provider under the state's health care malpractice claims act. *See Weidig v. Crites*, 323 Md. 408, 593 A.2d 1094, 1096 (1991) (interpreting MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-01).

[23] Because we find that medical assistants are not covered under the MMA, we do not address Brady's alternative argument that the determination of whether Flores acted within the scope of her employment as a medical assistant on June 19, 2004, was a question of fact requiring further factual discovery.

[24] Federal Rule of Civil Procedure 8 is made applicable to the Superior Court by Superior Court Rule 7. See SUPER. CT. R. 7.

[25] 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

[26] 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

[27] We recognize that Brady's complaint was filed in the Superior Court before the Supreme Court rendered its decisions in *Iqbal* and *Twombly*. However, "it is well-established that when an appellate court decides a case and applies the (new) legal rule of that case to the parties before it, then . . . it and other courts must treat that same (new) legal rule as 'retro-active,' applying it . . . to all pending cases, whether or not those cases involve predecision

2008)).[28] Thus, under *Robles, Twombly*, and *Iqbal*, courts must undertake a three step analysis to determine whether a complaint states a plausible claim for relief.

> First, the court must take note of the elements a plaintiff must plead to state a claim so that the court is aware of each item the plaintiff must sufficiently plead. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. These conclusions can take the form of either legal conclusions couched as factual allegations or naked [factual] assertions devoid of further factual enhancement. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief. If there are sufficient remaining facts that the court can draw a reasonable inference that the defendant is liable based on the elements noted in the first step, then the claim is plausible.

*Joseph v. Bureau of Corrections*, 54 V.I. 644, 649-50 (V.I. 2011) (*quoting Santiago v. Warminster Tp.*, 629 F.3d 121, 129-30 (3d Cir. 2010)) (internal quotation marks omitted).

██ Establishing a claim of negligence requires the plaintiff to demonstrate that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the defendant's negligence caused the plaintiff's injury. *Sealey-Christian v. Sunny Isle Shopping Center, Inc.*, 52 V.I. 410, 420 (V.I. 2009). "Causation includes cause in fact and legal causation, which is often referred to as proximate cause." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996). In order for the negligent act to be regarded as the cause in fact of the injury, it must

---

events." *Mercer v. Bryan*, 53 V.I. 595, 601 (V.I. 2010) (quoting *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S. Ct. 1745, 131 L. Ed. 2d 820 (1995)). This is consistent with how other courts have addressed this issue. *See Crabhouse of Douglaston Inc. v. Newsday Inc.*, Slip Op., 2011 WL 2748147, at *2 n.9 (E.D.N.Y. 2011); *Cosgrove v. Kansas Dept. of Social & Rehabilitative Services*, 744 F. Supp. 2d 1178, 1183 n.2 (D. Kan. 2010) (applying the Iqbal standard rather than the previous standard in *Conley*, despite the fact that plaintiff's complaint was filed before *Iqbal* was decided, as newly-announced interpretations of law from the United States Supreme Court can apply retroactively to cases not yet final).

[28] *See generally* Robert L. Rothman, *Twombly and Iqbal: A License to Dismiss*, 35 No. 3 LITIGATION 1 (2009) (analyzing how the Supreme Court's decisions in *Twombly* and *Iqbal* have given new life to dismissals under Rule 12(b)(6)).

be shown that the injury would not have occurred but for the act. *Id.* If there are multiple negligent acts that could have caused the injury, "then the negligent conduct must be shown to have been a substantial factor in causing the harm." *Id.*

 Brady has failed to allege sufficient facts to establish that Flores's actions on June 19, 2004, were the proximate cause of her injuries. In her complaint, Brady's only allegations against Flores relating to June 19, 2004 are as follows: 1) Flores assisted Dr. Cintron in performing a colonoscopy on Brady; and 2) Flores agreed with Dr. Cintron's remarks to Brady that her colonoscopy had gone well and her feeling of discomfort was a normal episode of gas following a colonoscopy. First, the mere assertion that Flores assisted *Dr. Cintron* in performing Brady's colonoscopy does not even allege a negligent act. While the complaint states that *Dr. Cintron* probed and jabbed Brady with medical instruments in a harsh manner, it does not allege that Flores committed any specific act that could be construed as negligent. Without more, the mere fact that Flores assisted Dr. Cintron in performing Brady's colonoscopy is not sufficient to establish that Flores acted negligently. *See Pol v. Our Lady of Mercy Med. Ctr.*, 51 A.D.3d 430, 857 N.Y.S.2d 102, 102 (N.Y. App. Div. 2008) (holding assistant surgeon not negligent for assisting lead surgeon who committed malpractice during surgery because lead surgeon had ultimate responsibility for making decisions). Second, the allegation that Flores agreed with Dr. Cintron's comments regarding Brady's colonoscopy and her bloating, even if construed as negligent, is not sufficient to establish causation. It was Dr. Cintron that first told Brady her colonoscopy had gone well and her feeling of discomfort was a normal episode of gas following a colonoscopy. Flores, in the presence of Dr. Cintron, merely agreed with his assessment. The fact that Flores agreed with Dr. Cintron's statements to Brady is not sufficient to establish that Flores's statements were the proximate cause of Brady's injuries. *See Fedorczyk*, 82 F.3d at 73. Accordingly, despite our determination that medical assistants are not covered under the MMA, we nonetheless affirm the Superior Court's order dismissing Brady's claims against Flores relating to June 19, 2004, under Federal Rule of Civil Procedure 12(b)(6). *See Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 238-39 (3d Cir. 1980) (affirming dismissal and declining to remand because ordering a remand so that a complaint could be dismissed under Rule 12(b)(6) rather than Rule 12(b)(1) would have been a futile

act); *see also Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) ("We may affirm a [trial court]'s judgment on grounds other than those considered by the [trial court] itself, as long as those grounds were presented to the court below.") (internal citations and quotations omitted); *Davani v. Virginia Dept. of Transp.*, 434 F.3d 712, 720 (4th Cir. 2006) (recognizing that appellate courts possess the discretion to rule on a Rule 12(b)(6) issue in the first instance).

██ Similarly, Brady has also failed to state a claim upon which relief can be granted for Flores's alleged actions on June 21, 2004. According to Brady's complaint, Brady contacted Dr. Cintron's office on June 21, 2004, to advise him that she was still suffering from acute abdominal pain and discomfort. But she did not speak with Dr. Cintron because he was unavailable. Instead, Brady spoke with Flores, who diagnosed Brady's symptoms as gas. Despite Flores's diagnosis, Brady insisted that her pain was abnormal and she demanded to speak with Dr. Cintron. The following day Dr. Cintron telephoned Brady, and after being advised that she was still suffering from acute abdominal pain and discomfort, Dr. Cintron diagnosed Brady's condition as gas and told her that her symptoms were normal. Based on these allegations Brady has failed to meet the required pleadings standard under *Twombly* and *Iqbal*. *See Iqbal*, 129 S. Ct. at 1950; *Phillips*, 515 F.3d at 234. Even if we accept Brady's allegation that Flores misdiagnosed her colon perforation as gas as true, Brady admits that she immediately dismissed Flores's misdiagnosis, insisted that her pain was abnormal, and demanded to speak with Dr. Cintron. Furthermore, Brady has admitted that Dr. Cintron contacted her the following day and upon being advised of her abdominal pain and discomfort, he diagnosed her condition as gas and stated that her symptoms were normal. Based on these allegations, Brady has failed to allege sufficient facts to establish that Flores's actions on June 21, 2004, were the proximate cause of her injuries. *See Iqbal*, 129 S. Ct. at 1949; *Fedorczyk*, 82 F.3d at 73. We therefore affirm the Superior Court's order dismissing Brady's claims against Flores relating to June 21, 2004 under Rule 12(b)(6).[29]

---

[29] Brady argues that Flores's motion to dismiss under Rule 12(b)(6) should have been converted into a motion for summary judgment under Rule 56 because its resolution required the consideration of evidence outside the pleadings. As discussed above, however, the determi-

## D. Deceptive Trade Practices

 In Brady's final argument, she contends that her claim against Dr. Cintron and Flores for deceptive trade practices does not fall under the provisions of the MMA. The MMA, however, applies to all tort and contract claims brought against health care providers. *See* 27 V.I.C. § 166d(a) ("No claim, whether in contract or tort, may be brought against a health care provider . . . ."). And courts generally consider a deceptive trade practices action to be a tort claim, albeit one authorized by statute. *See, e.g., Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391 (2d Cir. 2003) (holding claim for deceptive trade practices sounded in tort); *Hiller v. Mfrs. Prod. Research Grp. of N. Am., Inc.*, 59 F.3d 1514, 1537 (5th Cir. 1995) (same).[30] Thus, because Dr. Cintron is a health care provider under the MMA, the Superior Court properly dismissed Brady's claim against him for deceptive trade practices.

 Flores, however, is not a health care provider, and Brady's tort and contract claims against her do not fall under the MMA. *See* section C(1) *supra.* Nonetheless, Brady's complaint fails to state a legally sufficient claim of deceptive trade practices against Flores.[31] Professional negligence, such as medical malpractice, does not constitute a deceptive trade practice. *See Beyer v. Heritage Realty, Inc.*, 251 F.3d 1155, 1158 (7th Cir. 2001) (holding that defining "deceptive trade practices" to include medical malpractice claims would be an "absurdly broad definition"); *Gomez v. Diaz*, 57 S.W.3d 573, 579-80 (Tex. App. 2001) (holding medical malpractice claims cannot be recast as deceptive trade practice claims). While physicians and other health care providers are subject to claims for deceptive trade practices, only the entrepreneurial or commercial aspects of the profession are covered. *Haynes v. Yale-New*

---

nation to dismiss Brady's claims against Flores is based solely on Brady's complaint. Applying Rule 12(b)(6) is therefore proper.

[30] *See also Promex, LLC v. Perez Distrib. Fresno, Inc.*, No. 09-22285-CIV, 2010 U.S. Dist. LEXIS 90677, at *15 (S.D. Fla. Sept. 1, 2010); *Weaver, Bennett & Bland v. Speedy Bucks, Inc.*, 162 F. Supp. 2d 448, 453 (W.D.N.C. 2001); *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1054 n.29 (Alaska 2004); *Garcia v. Kaiser Found. Hosps.*, 90 Haw. 425, 978 P.2d 863, 878 (1999); *Selection Research, Inc. v. Murman*, 230 Neb. 786, 433 N.W.2d 526, 535 (1989).

[31] Although Flores is not a health care provider covered under the MMA, Brady's claims against her are still considered medical malpractice claims, which are outside the scope of the Unfair Trade Practices Act.

*Haven Hospital*, 243 Conn. 17, 699 A.2d 964, 974 (1997). In interpreting the Connecticut Unfair Trade Practices Act — which is very similar to its Virgin Islands counterpart[32] — the Connecticut Supreme Court held:

> [T]he touchstone for a legally sufficient [unfair trade practices] claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as [unfair trade practices] claims cannot form the basis for a [unfair trade practices] violation. To hold otherwise would transform every claim for medical malpractice into a [unfair trade practices] claim.[33]

*Id.*[34] Brady's complaint does not contain any specific factual allegations to support her claim that the entrepreneurial or commercial aspects of Dr. Cintron's business were implicated by Flores's alleged acts on either June 19, 2004 or June 21, 2004. Rather, Brady's deceptive trade practices claim against Flores is merely a medical malpractice claim recast as a deceptive trade practices claim. *See Gomez*, 57 S.W.3d at 579-80. We therefore affirm the Superior Court order dismissing Brady's claim against Flores for deceptive trade practices.

---

[32] *Compare* 12A V.I.C. § 101 ("No person shall engage in any deceptive or unconscionable trade practice in the sale, lease, rental or loan or in the offering for sale, lease, rental, or loan of any consumer goods or services, or in the collection of consumer debts."), *and* 12A V.I.C. § 110 ("The provisions of this chapter shall be construed so as to supplement the rules, regulations, and decisions of the Federal Trade Commission and judicial interpretation of 15 U.S.C. sec. 45(a)(1), of the Federal Trade Commission Act."), *with* CONN. GEN. STAT. ANN. § 42-110b(a) ("No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."), *and* CONN. GEN. STAT. ANN. § 42-110b(b) ("[I]n construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 USC 45(a)(1)), as from time to time amended.").

[33] The terms "unfair trade practices" and "deceptive trade practices" can be used interchangeably.

[34] In reaching this conclusion, the Connecticut Supreme Court cited to other jurisdictions — Washington, Michigan, and Illinois — that had reached similar holdings. *Haynes*, 699 A.2d at 973-74.

## III. CONCLUSION

Brady's failure to comply with the jurisdictional requirements of the Medical Malpractice Act prior to the expiration of the two year statute of limitations created more than merely a technical deficiency in her complaint that could be cured through a supplemental pleading. Additionally, a deceptive trade practices action is a tort, which falls under the provisions of the MMA. The Superior Court thus properly dismissed Brady's claims against Dr. Cintron. Furthermore, while the Superior Court erred in holding that a medical assistant working within the scope of her employment is covered by the MMA, Brady's complaint fails to state a claim against Flores upon which relief can be granted. Therefore, we affirm the order of the Superior Court granting Flores and Dr. Cintron's motions to dismiss.